26 665
50 521

ALFRED ANSTEE, Respondent, v. J. D. OBER ET AL.,
Appellants.

## St. Louis Court of Appeals, June 3, 1887.

1. PLEADING AND PROOF.—A plea that A and B promised in writing may be substantiated by proof that A promised in writing, that B was jointly interested with A, and that they both intended to be bound thereby.

2. ——— FRAUD.—A mere allegation that representations of a party to a contract were false is insufficient to avoid the contract on the ground of fraud ; the representations must have been made with a knowledge of their falsity.

3. MASTER AND SERVANT—RIGHTFUL DISCHARGE OF SERVANT.—A master who hires a servant for a definite period of time, on the faith of the latter's representations as to his capacity in that line of employment, may terminate the contract before the expiration of the time, if such representations are untrue.

4. ——— ACTION FOR WAGES—RECOUPMENT FOR DAMAGES.—In such a case, the servant may recover the value of the service actually rendered, subject to recoupment by the master for damages caused by the former's inefficiency to perform the service in accordance with his representations.

APPEAL from the Laclede County Circuit Court, W.
J. WALLACE, Judge.

*Reversed and remanded.*

FYAN, KELLERMAN & MORAN, for the appellants.

NIXON & MOORE, for the respondent.

THOMPSON, J., delivered the opinion of the court.
The plaintiff recovered a verdict and judgment against both the defendants, from which they prosecute this appeal. The action is brought to recover damages for a breach of the following contract:

"SPRINGFIELD, December 26, 1884.

"Memorandum of agreement between J. D. Ober and Alfred Anstee.

"The said Anstee enters into the employ of said Ober for the year 1885, for the consideration of six hundred dollars, to assist him on his farm, located on Gasconade river, in Laclede county—attending to the duties of a creamery, building houses, and any reasonable work required by said Ober. Witness our hands this day and date above written.

"Signed in duplicate.

"J. D. OBER,
"by R. H. OBER,
"ALFRED ANSTEE."

It is perceived that this instrument purports to be a contract between J. D. Ober and the plaintiff, and that R. H. Ober is not a party to it. The petition alleges that the plaintiff "entered into a contract *with the defendants*, by which he was to work for them on their farm, in the county of Laclede, for the year 1885, which will more fully appear by the said contract, which is herewith filed and made a part of this petition," etc. The contract thus exhibited and made a part of the petition is the contract above quoted. The plaintiff testified that this was the only contract under which he rendered services, and there was no evidence that there was any other. Nevertheless, against the objections of R. H. Ober, the plaintiff was allowed to give evidence tending to show that R. H. Ober was the real party in interest, with whom the contract was, in fact, made ; and the case was submitted to the jury upon the theory that if J. D. Ober made the contract with the plaintiff, and under the contract rendered services for both defendants, and if both defendants were jointly interested and partners in the farm, and if the contract was made for their joint benefit, the plaintiff was entitled to recover against both of them for a breach of it.

I. It seems, in the state of our decisions, that there was no error in these rulings. It was held, in the case of *See v. Cox* (16 Mo. 166), one of the earliest cases under our code of procedure, that the plaintiff might sue an attorney, upon a note purporting to be made by the defendant as attorney for a named principal, and recover against the defendant upon evidence, either that the defendant was a partner of the person in whose name, as principal, he executed the note, or that the defendant made the note without authority from the principal. That case in its facts is very much like the case at bar. The petition simply alleged that the defendant, Cox, executed a note annexed to the petition and prayed judgment against him for the amount of the note, and the note itself was signed "J. W. Rodes, by his attorney, W. B. Cox." That decision was followed by the supreme court in *Sanders v. Anderson* (21 Mo. 402), where the action was against Anderson and others upon a promissory note signed, "Steamboat Ben Lee and owners, by W. R. Wilson, Captain." The petition stated that the defendants, "by their promissory note" thereto annexed, "promised to pay," etc.; and it was held that the action was well brought. The court reaffirmed the doctrine of *See v. Cox* (16 Mo. 166), that, "in suing upon a promissory note, it was not necessary to specify by what name the party bound himself, but that it was sufficient to state the obligation generally, leaving the particular matter of it to proof." The court, also, approved the doctrine of *Grafton v. Bank* (4 N. H. 236), that individuals, as well as partnerships, may assume any name they please, and promissory notes, executed by them in their assumed names, are obligatory upon them. It is true that *Sanders v. Anderson* is not precisely like the case at bar; because there, as the court held, the defendants, being, in fact, the owners of the Steamboat Ben Lee, were, in the note, sufficiently identified by description; but we cite the case to show the general rule, liberally applied under our code of

procedure, that a party need not, in his pleading, set forth *the evidence* by which he proposes to make out his case (*Gates v. Watson*, 54 Mo. 585, 591; *McNees v. Railroad*, 22 Mo. App. 224, 233); and if he does so it may be regarded as surplusage. If R. H. Ober, by reason of difficulties with his creditors, or for any other reason, attempted to carry on this business in his son's name, and in that name made a contract with the plaintiff, which, in fact, was understood to be a contract between the plaintiff and R. H. Ober himself, the plaintiff may, upon the authority of *See v. Cox* (16 Mo. 166), maintain this action against him upon the contract, jointly with J. D. Ober, and recover, by proving that he and J. D. Ober were carrying on the farm in partnership; and although the petition might have been better drawn, we are of opinion that it is good after verdict.

II. The separate answer of J. D. Ober set up that the plaintiff represented himself to be a practical, skillful, and experienced farmer and stock raiser; an experienced and skillful dairyman and butter-maker, and well and fully informed in all the modern methods of managing the creamery business and the business of butter-making; and, also, that he was a skillful carpenter and joiner. It, also, alleged that the defendant was about to commence farming and stock raising, on a large scale, and was to carry on the creamery and butter making business, and, in order to do this, would need creamery houses, and other buildings; that, relying upon the plaintiff's representations, the defendant, J. D. Ober, agreed to employ him; that the representations so made by the plaintiff were false and fraudulent; that the plaintiff knew nothing about farming or stock raising, or the butter-making business, was no carpenter and joiner, and that he, in every respect, failed to fulfill his representations. The answer then sets up that the plaintiff worked and acted, in a secret way, against the interests of this defendant; would do no work himself,

and advised other employes to shirk their duty, and to kill time ; and that, owing to his actions, in this regard, and his failure to perform the duties for which he was employed, the defendant had been damaged in the sum of two thousand dollars.

Before proceeding to the important question which arises upon evidence tendered under this answer, it is necessary to determine the character of the answer itself. It is an unskillful pleading. Matters of defence and matters of counter-claim are mingled together in one paragraph ; and, on another trial, counsel for the defendants would do well to consider the propriety of amending their answer, so as to state these matters in separate paragraphs. If the plaintiff procured the contract from the defendants through fraud, the contract was void, at their election, upon discovering the fraud, and they were at liberty to discharge him, at any time, for that reason. But, it is well settled that, in order to avoid a contract for fraudulent representations, the representations must have been *knowingly* false, or else they must have been made recklessly by the party, without knowing whether they were true or false.

In this case, the subject-matter of the representations was largely matter of opinion and belief. The plaintiff might honestly believe and represent that he was a good dairyman, farmer, or carpenter, while the fact may not have been so. In order to make such a representation fraudulent, it must have been false to the knowledge of the party making it. The pleader must aver this, and he does not do it by merely using the epithets, false and fraudulent. This answer, therefore, is not regarded as pleading, in sufficient terms, that the contract was void, by reason of the plaintiff's fraudulent representations.

If, however, the plaintiff represented himself, in good faith, to be a good farmer, dairyman, or carpenter, and the fact turned out to be otherwise, the misrepresentations would justify the defendants in terminating

the contract. The plaintiff is bound by his representations, forming material inducements to the contract, and relied on by the defendants in making the contract, although such representations were honestly made.

In this state of the pleadings, the defendants offered to prove, by several witnesses, as recited in the bill of exceptions, "that, by reason of the plaintiff's failure to perform his duty, and do the work he represented himself competent and able to do, and of his inefficiency and want of knowledge to do the work that he was employed to do, and represented himself as able to do, when he was engaged to work and carry on the farm, that the defendants were damaged in the sum of fifteen hundred dollars." This tender of evidence proceeded to specify that "said damages consist of the failure to raise the crop of corn that could and would have been raised on the farm, if the same had been planted in proper season and properly cultivated;" and of "the loss to the *defendants* by reason of the failure of the plaintiff to complete the creamery houses, and commence the making of butter within the time he had agreed to do, and his [failure] to save and cure the crop of hay raised on said farm, and his failure to use and work the men furnished him by the defendant, in a proper manner." This evidence was objected to by the plaintiff, "for the reason that the defendant's answer does not specially allege in what particular manner he was damaged, and because it was irrelevant, and inadmissible, under the issues presented." "The court sustained the objection, and the defendant excepted."

It will be observed that, according to the above recitals, this evidence was tendered by the *defendants*. If this was so, it amounted to a concession, by R. H. Ober, that he was a party to the contract, since, if he had not been a party to the contract, he could not have been damaged, as thus stated. But, when the plaintiff objects to it, he places his objections on the ground that the *defendant's answer*, which must be assumed to refer

to the answer of J. D. Ober, does not specifically state in what particular manner *he was damaged*, etc. And, finally, when the court sustains the objection, the defendant takes an exception—which defendant, the record does not state. It is difficult to say how to treat an assignment of error upon a bill of exceptions drawn in such an unskillful manner. We suppose that the purpose of the defendant's counsel was to make this tender of evidence in behalf of J. D. Ober, under the allegations of the counter-claim, set up in his separate answer. Those allegations may be classified in three heads (1) False representations, by the plaintiff, as to his qualifications as a farmer, dairyman, etc.; (2) secretly working against the interests of his employer, in the manner stated; (3) a general allegation of his failure to perform the duties for which he was employed. These allegations would seem to be sufficiently specific to let in the evidence thus tendered and rejected. It seems that the counter-claim was pleaded with sufficient particularity to notify the plaintiff of the nature of the cross-demand set up, and that any greater particularity would have been mere pleading of evidence.

III. The defendants requested, and the court refused, the following instruction:

"The court instructs the jury that if they believe, from all the facts and circumstances in proof in this case, that the plaintiff represented himself to be a practical, skillful, and experienced farmer, and that the defendant, relying on and believing such representations to be true, entered into a contract with the plaintiff, and engaged his services for one year, to carry on, conduct, and manage the Bowman farm mentioned in the evidence, and you further find that such representations were not true, and that the plaintiff was not competent to carry on, conduct, and manage the said farm, then the plaintiff can not recover in this action, notwithstanding the jury may believe that the services rendered were of some value, and you will return a verdict for the defendant."

We take the view that the court erred in refusing this instruction. If the plaintiff, by these false representations, procured the defendant, J. D. Ober, to enter into the contract sued on, then, as already stated, the defendant was justified in rescinding the contract and in discharging the plaintiff, upon discovering the untruthfulness of the representations. A contract, thus procured by misrepresentations of material facts, which was voidable at the objection of the other contracting party, after discovering that the facts were not true, and which was avoided and terminated by him, could not, on plain principles, become the foundation of a recovery. This, it is true, would not prevent the plaintiff from suing to recover the reasonable value of the services rendered by him to the defendant ; but his action would be upon an implied contract for a *quantum meruit*, and not on the express contract, voidable and avoided for the misrepresentations. The defendant would be entitled to set up the contract and claim damages for its breach, by way of counter-claim ; the measure of the plaintiff's damages would be the value of his services, not exceeding the contract price, less any damages which the defendant may have sustained through the false or erroneous representations, whereby the defendant was induced to enter into the contract. The plaintiff's representations as to his qualifications as a farmer, dairy-man, and carpenter, were, if made as alleged, material inducements to the contract, and, if they turned out to be untrue, the defendants would have the right to rescind the contract, and this would be done by discharging the plaintiff from service, as the evidence tends to show the defendants did.

IV. The testimony in regard to the plaintiff being paid out of the proceeds of the butter-making business was properly excluded, because, while the answer avers that he was to be so paid, it fails to further aver that there were no such proceeds.

With the concurrence of Rombauer, J., the judgment will be reversed and the cause remanded. Lewis, P. J., is absent.