## PAYNE, Agent, v. DAUGHERTY.*

### (Circuit Court of Appeals, Eighth Circuit. October 2, 1922.)

### No. 5707.

**1. Master and servant $\Longleftrightarrow$88(1)—Fraudulent procurement of employment no defense for negligent injury.**

In an action under the federal Employers' Liability Law (Comp. St. §§ 8657–8665), based on fault under the Safety Appliance Acts (Comp. St. §§ 8605–8615) the defense that plaintiff procured his employment by fraudulent misrepresentations as to his former employment and prior injuries is not available, in view of the terms of sections 1 and 5 of the former act.

**2. Evidence $\Longleftrightarrow$547—Proof of subjective symptoms inadmissible.**

In personal injury action, in examination of physician who examined plaintiff, proof of plaintiff's subjective symptoms, such as statements or voluntary movements, is inadmissible; but proof of involuntary movements on such examination, such as the results of a pin-pricking test when plaintiff was blindfolded, is admissible.

**3. Damages $\Longleftrightarrow$208(2)—Separating damages from accident and prior injury held for jury.**

In personal injury action, it was proper to submit to the jury the task of separating the damages due to the accident sued for and the plaintiff's former injuries; the question being one of proximate cause.

**4. Trial $\Longleftrightarrow$260(10)—Instructions need not be repeated.**

In personal injury action, an instruction that plaintiff could not recover for mental pain and anguish was properly refused, where the main charge eliminated such element, as it was not necessary to repeat the proposition.

**5. Appeal and error $\Longleftrightarrow$1046(5)—Trial $\Longleftrightarrow$29(1)—Comment on whether railroad or Director General would pay for injury held not error, and, if error, cured.**

In switchman's action for injuries against the federal agent in charge of railroad operations, a comment by the court that it was uncertain whether settlements would be out of the funds of the Director General, and that it was not a matter of great importance, and "not a matter for our consideration," was not error, but, if error, was cured by an instruction setting out the relation of the Director General and the railroads.

**6. Appeal and error $\Longleftrightarrow$977(1), 1004(1)—Circuit Court of Appeals cannot review excessiveness of damages nor denial of new trial.**

In personal injury action the Circuit Court of Appeals could not review the question whether damages were excessive nor the trial court's action in denying motion for new trial.

Lewis, District Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by Thomas Laughlin Daugherty against John Barton Payne, as Agent, etc. Judgment for plaintiff, and defendant brings error. Affirmed.

Jesse L. Root, of Omaha, Neb. (Byron Clark, Fred A. Wright, and J. W. Weingarten, all of Omaha, Neb., on the brief), for plaintiff in error.

Gerald F. Harrington, of Omaha, Neb. (M. F. Harrington, of Omaha, Neb., on the brief), for defendant in error.

Before CARLAND and LEWIS, Circuit Judges, and COTTERAL, District Judge.

COTTERAL, District Judge. This action was brought against the Director General of Railroads (for whom the plaintiff in error has been substituted) by the defendant in error to recover damages for personal injuries sustained, as his petition avers, while he was employed as a switchman, by falling because of a defective handhold in the ladder of a car moving in interstate commerce, in the yards of the Chicago, Burlington & Quincy Railroad Company, at Alliance, Neb. The defendant answered, admitting that there was the defective car equipment, and that the car was about to be switched for the purpose of interstate transportation of goods, denying the other averments of the petition, and alleging that the plaintiff obtained his position by fraudulently misrepresenting his former employment and concealing prior injuries, that he was a victim of epilepsy, to which his fall was attributable in whole or in part, and that his injury, which was slight, was the voluntary result of a design to make an exorbitant and fraudulent claim against the defendant. It was conceded at the trial of the case that the car in question was partially loaded for consignment from Alliance to a point outside of Nebraska.

The jury returned a verdict in plaintiff's favor for $27,500, and judgment was entered for that sum, but he was required to remit the excess over $20,000 as a condition to the overruling of defendant's motion for a new trial. There are 35 assignments of error, but they have been grouped and discussed under 11 heads, and they may be still further condensed for the purposes of our decision.

[1] A principal contention, embraced in a number of assignments, is that the trial court erred in excluding evidence offered to defeat the action, on the ground that the plaintiff fraudulently secured his employment, as pleaded, and in refusing instructions tendering such defense. In our opinion, the rulings were correct. The complaint is not that proof is incompetent which tended to attribute the fall from the car to prior injury or affliction. That is far different from permitting a retroactive dissolution of the relation of master and servant, by virtue of the contract, which, even if voidable, was, while it subsisted, attended with the duty, required by law, for the safety of the latter. Cases are cited involving different facts, but of contrary import in principle. We regard the decisions such as Lupher v. Atchison, T. & S. F. Ry. Co., 81 Kan. 585, 106 Pac. 284, 25 L. R. A. (N. S.) 707, as declaring the sound and just rule, namely, that there is liability to the employee, notwithstanding the inducement to the contract. Furthermore, this action was brought under the federal Employers' Liability Law (35 Stat. 65 [Comp. St. §§ 8657–8665]), and the fault of the defendant was alleged under the Safety Appliance Acts (27 Stat. 531; 32 Stat. 943 [Comp. St. §§ 8605–8615]). And in our opinion we should hold that the defense urged was not available, in view of the positive terms of sections 1 and 5 of the former act. See Phila., Balt. & Wash. R. R. v. Schubert, 224 U. S. 603, 32 Sup. Ct. 589, 56 L. Ed. 911; Chicago & Alton R. Co. v. Wagner, 239 U. S. 452, 36 Sup. Ct. 135, 60 L. Ed. 379; Spokane & Inland R. R. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125.

[2] Errors are assigned to the admission of testimony by singling out certain disconnected questions and answers. None of them impress us as being well taken or prejudicial. No authority is cited to sustain them, except in one instance which we shall notice, as it is not altogether without force in the way it is presented. It occurred in the examination of Dr. Dwyer, who stated that by the test of pricking the plaintiff with a pin there was some muscular response in the first experiment, and a great deal more in the second. We quite agree, by authority of this court, that proof was not admissible of subjective symptoms, such as statements or voluntary movements. Union Pac. R. Co. v. McMican, 194 Fed. 393, 114 C. C. A. 311. But the testimony does not appear to be open to that objection. The trial judge repeatedly excluded such testimony. The witness stated he could not form an opinion as to the response from the application of heat or cold, without some manifestation of voice or movement. But it seems certain from the rulings made, and from the fact that plaintiff was blindfolded when the pin tests were given, that the witness meant to confine his answers only to the involuntary result of them, and that they must have been so considered by the jury. Hence we think the testimony was unobjectionable. Some of the testimony criticized was by way of professional opinion, and in the form of direct inquiry as to the facts; but it could not have been regarded by the jury, under the circumstances, in any other than in the former sense, and the foundation was amply laid. We are not persuaded that any material error was committed in admitting or excluding testimony.

[3, 4] It is insisted that there was error in giving and refusing instructions to the jury. One assignment is that a verdict should have been directed for the defendant for want of proof to establish a cause of action. It is clear, however, that the plaintiff, while scaling the car ladder in the course of his employment, fell because of the loose and defective handhold, and was thereby injured, and the evidence was ample to sustain a finding by the jury that the fall and injury were proximately due to the failure of the defendant to maintain the ladder in a safe condition, as required by the Safety Appliance Act, and not to some other cause, for example, the plaintiff's alleged impaired condition. The assignment is therefore not well taken. In the same connection, it is said that the court erred in submitting to the jury the task of separating the damages due to this accident and the plaintiff's former injuries. It was certainly the province of the jury to ascertain the damages proximately resulting from the fall of plaintiff, and to deny allowance to him for any other cause, and the court therefore properly left this duty to the jury.

Another exception was that there was error in refusing an instruction to the jury to the effect that plaintiff could not recover for mental pain and anguish. But the main charge eliminated such element, and there was no error in not repeating it, at the request of the defendant. Again, there is complaint that the court instructed the jury that allowance might be made to the plaintiff "for any future pain and suffering that is reasonably certain to result because of such fall." The rule invoked is that it is error to submit to a jury matters not supported by

evidence but resting on probabilities or speculation. It is only needful to say that the evidence was sufficient to uphold a finding that pain and suffering would result in the future from the fall.

[5] Another objection is that the court commented on the contingency as to who would pay the cost of the railroad operations. The remarks of the court occurred at the beginning of the charge in a general statement of the case. It was said to be a matter of uncertainty whether the settlements would be out of the funds of the Director General, and one of no great importance or consequence, and again, "not a matter for our consideration." Obviously, the court was endeavoring to explain why the defendant was a public officer, instead of the railroad company. This was doubtless called for, in order to avoid any misconception by the jury that might interfere with an impartial consideration of the case. The foregoing is not all that was said, but it is illustrative. If it be assumed there was possible prejudice, this was fully removed when the jury was recalled and the court charged as follows:

"This is a suit against the Director General of Railroads, and not against the railroad company, and I believe I stated at one place that there was an act of negligence charged against the railroad company. It is charged against the Director General operating this railroad company. So far as I undertook to state the relations between the government and the railway companies during the period that the Director General has control, I think it is entirely immaterial to the trial of the issues in this case. The Director General is the one that is sued, and wherever the money comes from now, or whatever future adjustment shall be made between the railway companies and the Congress of the United States, is a matter that is immaterial to the trial of this issue, which is: Did the plaintiff fall, and was he injured, and was he pecuniarily damaged as a result of that fall? If so that is all that you have to decide here. As to who pays it, or when, or how, is perhaps a matter of more general interest than of interest to us as jurors or courts at this time."

Error is also predicated on an alleged misstatement in the charge of the accident, to the effect that the plaintiff "had hold with his hand of one rung of the ladder," whereas "the evidence is uncontradicted he had hold of a rung of the ladder with both hands," citing the plaintiff's testimony. The objection would be hypercritical in any event, as the court expressly left the facts to the jury. But the statement in the charge was accurate. It is true counsel assumed in one question that the plaintiff was holding with both hands, when asking whether he was in an upright position, and the answer was in the affirmative. But the assignment is little short of a misquotation, as the plaintiff testified explicitly, in answer to direct questions, that he was holding with his hand, and with his right hand, and there was corroboration by another witness.

[6] The verdict is said to be excessive, but, with doubt of the authority of this court to entertain the objection, it is adverted to, for its influence in considering other questions. This point was raised in the motion for a new trial, along with numerous others, prominent among which was the ground of newly discovered evidence. Affidavits were filed by both parties. There was undoubtedly a strong showing as to prior injuries in opposition to plaintiff's testimony, of misrepresen-

tation to obtain his employment, and of defendant's inability to produce the additional evidence at the trial. The motion was overruled, as stated, on condition that plaintiff should remit a portion of his recovery. If the ruling were open to our consideration, we are not convinced there was error or abuse of discretion in making it. Decisions are cited from the state courts, based on state laws, but they do not apply in the federal courts. The complaint of excessive damages cannot be entertained by this court, nor are we authorized to review the action of a trial court at law in denying a motion for a new trial. City of Manning v. German Ins. Co., 107 Fed. 52, 46 C. C. A. 144; Pocahontas Distilling Co. v. U. S., 218 Fed. 782, 134 C. C. A. 566; Whitaker v. U. S., 220 Fed. 114, 136 C. C. A. 206; Fisher Mach. Co. v. Dougherty, 231 Fed. 910, 146 C. C. A. 106; Yellow Cab Co. v. Earle (C. C. A.) 275 Fed. 928.

No other questions are raised which appear to call for special notice. Our conclusion is that the record discloses no reversible error, and for this reason the judgment in this case is affirmed.

LEWIS, District Judge (dissenting). Daugherty got a verdict for $27,500.00. On defendant's motion for a new trial the court required him to remit all above $20,000.00, which he did, and then overruled the motion. I am for reversal and a new trial. He was a brakeman on the C., B. & Q. Railway, and fell from a ladder on a box car as it was starting to move in the yards at Alliance, Neb. He charged that his fall was due to negligence in having an insecure grab-iron as part of the ladder, and that the fall produced severe and permanent injuries, to his great damage. The insecure grab-iron was the first one above the iron stirrup under the corner of the car. He had just started to ascend the ladder composed of grab-irons and the stirrup; one foot was in the stirrup and he had hold of the irons above the insecure one with his hands. He claimed and testified that as he put one foot on this grab-iron it gave way, caused him to fall to the ground and the injuries complained of resulted from that fall. That was his whole case. The issues of fact thus presented by the proof were, first, did the insecure grab-iron cause him to fall? and second, did the injuries complained of result from that fall? Concededly, the evidence adduced required that both issues be submitted to the jury; but the grounds of my dissent are that the court submitted them in a way prejudicial to the plaintiff in error, and also that the facts brought forward on motion for a new trial demonstrated that a fair trial had not been had and it was an abuse of the court's discretion not to grant another trial. There is no doubt that the grab-iron was insecurely fastened at one end and that Daugherty fell just as he started to ascend, but there is grave doubt as to whether the insecure grab-iron caused him to fall, and whether his physical condition was at all attributable to that fall. He fell but a short distance on a path of cinders, gravel and earth by the side of the car. The force of the fall was somewhat broken by his coming in contact with another brakeman who was standing by. He testified that his body struck the ground on his hips and the back of his head, and that he was rendered unconscious for a short time. He

then got up and walked away. He testified that since then (April 24, 1919) he has had to walk with a cane, is lame in his right leg, has violent headaches about two-thirds of the time, is dizzy and at times feels as though he would fall, especially when climbing stairs, has lost weight and physical strength and energy, his kidneys are affected and he suffers great pain. It will be seen later that it is an issue of great moment as to just when he became unconscious, whether before or after he fell. His testimony discloses that he was uncertain as to what part of his body struck the ground.

"Q. Do you know where you struck—what you struck on? A. Seemed like—
"Q. (interrupting). No, if you know. A. My hips and head."

He had been in railroad service, most of the time as brakeman, for about 18 years and had been in the employ of many roads, but only for a very short time with the Burlington. When he made application for employment in the preceding December, he certified over his signature:

"That so far as I am aware I am now in good health and have no injury or disease, constitutional or otherwise, except as shown on the accompanying statement made by me to the medical examiner, which statement shall constitute a part of this application."

That statement is in the form of questions and his answers thereto, which were taken down. Among them is this:

"Q. Have you ever had any of the following: * * * Dizzy or fainting spells? A. No.
"Q. When and where, how long and with what were you last sick? A. 1915—Colorado—2 weeks—appendicitis.
"Q. What injury or injuries have you ever received? A. Cut on left leg.
"Q. Where and when? A. Pennsylvania, 1917.
"Q. When were you last unable to work on account of injury? A. 1917.
"Q. Have you now or have you ever had any disease, tumor, or ulcer, or any physical defect as above stated? A. No."

Daugherty certified over his signature that his answers were true. He was thereupon given temporary employment, and thereafter, on March 14, 1919, he signed another statement like the foregoing and made like answers to the medical examiner on application for permanent employment. When on the witness stand he admitted that in October, 1918, while in the employ of the Northwestern road at Huron, S. D., he fell from the ladder on a car, claiming that the grab-iron gave way with him and that he "lit on his hips and shoulders across a rail" and was laid off for eleven days, also that eleven days before the accident in question he fell between two cars at Alliance and laid off four days. But the matter of greatest importance brought from him while he was upon the witness stand was his statement that when he was about eight years of age he was struck on the head with an iron disc, and on account of it he was operated on at Salida, Colo., in May, 1916, and a part of his skull over the left ear and near the top of his head, about one by two inches, was removed at the place of the stroke. He testified that he had had no trouble on that account before the operation until about the time the operation was performed, and that after it was performed his head was fine and had never bothered him since,

that he worked right along after that. He said the operation was performed, as he understood it, to remove pressure on his brain caused by the injury from the stroke with the iron disc, that he began to have severe pains in his head about three months before the operation, that they became very intense and interfered with his sleeping, that they interfered a little with his maintaining his equilibrium and at times his mind seemed to be a blank and his consciousness seemed to vanish, that he went back to work in a little less than 30 days after the operation, and his head had never bothered him again until after he fell from the ladder on April 24th. One of plaintiff's witnesses, a fellow brakeman, testified that he heard persons remark before April 24th that Daugherty walked "queer," but that he had not observed anything unnatural with his walk.

Responding to the testimony of plaintiff relative to the stroke on his head, its later effects described in his testimony, and the operation to remove a piece of his skull, the defendant brought on competent and skilled surgeons. They characterized the later effects from the stroke to be what is professionally known as traumatic epilepsy. Dr. Young testified as follows:

"Q. Now, doctor, is trephining ever resorted to for the purposes of relieving traumatic epilepsy? A. Yes, sir.

"Q. And what results are obtained from operations of that kind? A. As a general rule they are very hopeless. We sometimes get results in a very small percentage of cases. In quite a number of cases we get a temporary arrest of the convulsions, which may go anywhere from two months to two or three years, but the attacks tend to recur. That is the general experience, I believe of surgeons."

Obviously, there was grave question as to whether plaintiff's fall from the ladder was brought about by the insecure grab-iron or by a recurrence of temporary unconsciousness from the old injury to his head. He had hold of the grab-irons above with both hands, and one foot was in the stirrup. Within six months before this he had fallen twice in much the same way; and there was likewise serious question as to whether the injuries which he attributed to the fall were not the result of that stroke. Under this condition I think plaintiff in error was entitled to the substance of his requests which were denied by the court, wherein it was asked that the jury be instructed specifically to inquire and determine whether the fall and the injuries complained of were not attributable to the stroke on his head, and that it was prejudicial to deny those requests and submit only in general terms the question as to whether or not the negligence complained of caused the fall, and whether the injuries resulted from that fall.

After verdict the court granted plaintiff in error leave to file a motion for a new trial and affidavits in support thereof. Some of the affidavits were made by parties residing at Salida, Colo., where plaintiff was in the employ of the Denver & Rio Grande Railroad. The affiants were acquaintances of Daugherty and his wife. They disclose that he suffered severely from headaches both prior and subsequent to the operation on his skull in May, 1916, that he had dizzy moments and at times was unconscious and that both he and his wife said that the operation had not given him much relief, that his wife reported to

neighbors that his spells of headaches rendered him so nervous that he could not control himself and that he was hysterical, and would imagine that he saw things that did not exist, and would cry and cry without any apparent cause and could not be pacified, and that some of the neighbors saw him when he was in that condition. His condition and conduct finally resulted in a lunacy inquest, and on December 13, 1917, he was adjudged insane by regular court proceedings and committed to the insane asylum at Pueblo, Colo. After he had been there a short time his wife succeeded in obtaining his release and he later went back to his old home in Pennsylvania. Affidavits were attached to the motion from persons who saw him while he was visiting his old home. Several of them state that while he was there he complained of suffering pains in his head and back and of dizziness, and that he stated to them that the operation had been unsuccessful and he intended to submit to another operation. One of them averred that he caught Daugherty one day and held him as he was "falling in a sort of faint or dizzy spell"; that he had an unnatural walk. One of the Colorado affiants also averred that his walk was peculiar, a "sort of sluggish gait."

There was also a showing that there was no negligence or lack of diligence on the part of plaintiff in error in preparing for the trial of the cause and in not discovering before trial the facts as to Daugherty's physical condition, both before and its continuation after the surgical operation on his skull. Indeed, no such showing was necessary in view of the written statements made by Daugherty on his applications for employment. He had thick, heavy hair which covered over the place where his skull had been operated on, and he expressly withheld the facts that might have led to an earlier investigation and discovery, and he testified falsely when on the witness stand as to his condition after the surgical operation, if the affidavits of the several persons accompanying the motion speak the truth. The plaintiff in error had no opportunity to bring forward these relevant facts, vital to the issue, at the trial. It offered no proof whatever of that kind, and the claimed facts which it presented to the court with its motion for a new trial were not cumulative. And if those facts should be presented at a trial it is hard to believe that a jury could find that a preponderance of the evidence establishes the charge that the insecure grab-iron caused the fall and the claimed injuries. It seems to me that plaintiff in error has not had a fair trial, that Daugherty's false and misleading statements brought about an unfair trial, and that there was an abuse of discretion in not setting the verdict aside and granting another trial.