600     APPELLATE COURTS OF ILLINOIS.

Rock v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 247 Ill. App. 600.

# John Rock, Appellee, v. Minneapolis, St. Paul & Sault Ste. Marie Railway Company, Appellant.

## Gen. No. 31,914.

1. PLEADING—*waiver of misnomer of plaintiff by failure to plead in abatement.* A misnomer of the plaintiff in an action can only be pleaded in abatement and is no ground for setting aside the proceeding.

2. PLEADING—*failure to challenge misnomer of plaintiff as waiver.* A defendant who does not challenge by plea in abatement the misnomer of the plaintiff cannot complain of the judgment for plaintiff because of the misnomer.

3. PLEADING—*plea not amounting to one in abatement as insufficient challenge to misnomer of plaintiff.* A special plea by a master, in an action for damages by a servant, that the plaintiff (not naming him) ought not to maintain his action, because the plaintiff was not employed by the defendant at the time of the injury, does not amount to a plea in abatement and does not save the point of the misnomer of the plaintiff.

4. MASTER AND SERVANT—*one obtaining employment by fraud as employee within Federal Employers' Liability Act.* One who obtains employment from a railroad company by giving a wrong name in an application not in his handwriting, and by sending an impostor to take required physical examination, a prior application having been rejected because of physical disability, is not by such fraud deprived of his right to claim the benefits accruing to "employees" under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, when injured in the employment without his physical condition contributing thereto.

5. MASTER AND SERVANT—*burden of proving contributory negligence under Federal Employers' Liability Act.* The burden of proving the contributory negligence of an employee under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, is on the defendant.

6. MASTER AND SERVANT—*effect of contributory negligence in action under Federal Employers' Liability Act.* The mere fact that a plaintiff, in an action under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, was guilty of contributory negligence will not bar a recovery but will mitigate the damages.

7. MASTER AND SERVANT—*assumption of risk in crossing in front of moving car as question for jury.* Whether a railroad employee assumed the risk in crossing a track at night in front of an oncoming caboose, which was giving no signal, warning or light, was a question for the jury, the evidence being conflicting as to the existence of custom to have a man on the car with a light.

Appeal by defendant from the Circuit Court of Cook county; the Hon. WALTER BREWER, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927. Affirmed. Opinion filed February 14, 1928.

JOHN L. McINERNEY and EDWARD H. MURNANE, for appellant.

H. H. PATTERSON, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county for $15,000 in an action on the case, brought by the plaintiff, John Rock, against the defendant, Minneapolis, St. Paul & Sault Ste. Marie Railway Company, a corporation, for damages for injuries sustained by him in an accident while working as a switchman for the defendant. The case was tried before the court with a jury and a verdict was returned against the defendant for $15,000. The declaration alleges that the plaintiff was an employee under the provisions of the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶¶ 321–329, and the defendant admits that he was.

The suit is brought in the name of John Rock, but the real name of the plaintiff is Joe Rock, and the defendant contends that "the suit was improperly brought in the name of a person who had no connection whatsoever with the accident; * * * that the judgment herein entered in favor of John Rock is wholly unwarranted." It appears that the plaintiff made two applications for work with the defendant company. In the first he gave his real name and in the second he gave the name of John Rock. The night yardmaster of the defendant testified that on the occasion of the second application he gave the plaintiff a letter to the superintendent in which the plaintiff was named "John Rock" or "J. J. Rock"; that everybody

called him Joe; that he is known there to this day as
Joe Rock; that he put the plaintiff to work as John
Rock, but that he knew he had been called Joe right
along. The testimony of the plaintiff is to the effect
that when he made the second application the yard-
master knew that he was the same person who had
been rejected under the first application. It is clear
from the record that the plaintiff in the instant case
is the person who sustained the injuries for which the
suit was brought. The defendant did not file or offer
to file a plea in abatement, and "a misnomer of the
plaintiff can only be pleaded in abatement and is no
ground for setting aside the proceedings." (*Spring-
field Consol. Ry. Co. v. Hoeffner,* 175 Ill. 634, 644. See
also *Salisbury v. Gillett,* 2 Scam. 290; *Moss v. Flint,*
13 Ill. 570.) Had the defendant in the present case
seen fit to file a plea in abatement, the plaintiff might
have amended the pleadings so as to make them
show his real first name, or he might have filed a
replication to the plea that he was as well known by
the name of John Rock as by the name of Joe Rock.
The defendant cites in support of its contention
*Pinckard v. Milmine,* 76 Ill. 453, and *Schmidt v.
Thomas,* 33 Ill. App. 109. Neither of these cases sup-
ports the contention of the defendant. In the first the
defendant filed a plea in abatement averring that
" 'said Edwin C. Bodman,' one of the plaintiffs, was
named Edward C. Bodman, and not Edwin C. Bod-
man," and the plea was in all respects formal. The
plaintiffs filed a replication to the plea that neither
traversed the allegation of misnomer nor replied that
the plaintiff was known as well by one name as the
other. The defendants filed a general demurrer to
the replication which the trial court overruled. The
Supreme Court merely held that as the replication did
not tender a proper and triable issue, the demurrer
should have been sustained, but in the present case
the defendant did not see fit to properly challenge the
misnomer of the plaintiff, and they will not be now

heard to complain of the same. Even a defendant, sued under a wrong name, must take advantage of the misnomer by plea in abatement, and if he does not he will be concluded by the judgment or decree rendered, the same as if sued in his true name. (*Pennsylvania Co. v. Sloan,* 125 Ill. 72; *Proctor v. Wells Bros. Co. of New York,* 262 Ill. 77.) In *Schmidt v. Thomas, supra,* it appears that the summons named Mathias Schmidt and Mrs. Schmidt as defendants, and the return of the sheriff showed the summons was served on the "defendants Mathias Schmidt and Mrs. Schmidt." A declaration stating a joint cause of action was filed against "Mathias Schmidt and his wife, Mrs. Harriet C. Schmidt, whose other name is unknown to the plaintiff." A judgment by default was rendered against "the said defendants Mathias Schmidt and Mrs. Schmidt." It was held that the law does not recognize the abbreviation "Mrs." as the name of an individual and that therefore the judgment by default was erroneous. The court states, however, that if it had been a judgment after a contest, and if it appeared that justice had been done, the error might have been disregarded. This case, on the point in question, has never been cited but once ( *Dale v. Keefe,* 178 Ill. App. 262) and there the court refused to follow the ruling in *Schmidt v. Thomas, supra.* The latter case, on the facts, has no application to the instant contention and it is apparent from the opinion that the court used an old common-law rule as a ground for setting aside a default judgment. The defendant argues that the special plea filed by it, alleging "that the plaintiff (not naming him) ought not to have or maintain his aforesaid action against this defendant, because it says that at the time of the committing of the grievances set forth in the declaration and each count thereof, or at any other time, the plaintiff was not employed by the defendant," saves the point. That plea is neither in form nor substance a plea in abatement, and it did not serve to bring any new issue into the case, as under

the plaintiff's declaration he was bound to show that he was an employee of the defendant company. The proof is clear that he was. The contention of the defendant was not only not raised by a plea in abatement, but, although the defendant has in the assignment of errors alleged thirty-four grounds for reversal of the judgment, in none of these is any reference made to it. We find no merit in it.

The proof shows that the plaintiff, under his real name, applied to the defendant for work as a switchman October 1, 1923. His application was rejected because he had been operated on for a rupture, appendicitis and abscesses of the stomach. Then, under the name of John Rock—that being the name of a brother —he made a second application October 18, 1923. This application was not in the handwriting of the plaintiff and when the time came for him to be physically examined he did not take the examination himself but sent a man named Lenhart, who pretended to be the plaintiff and underwent the physical examination. Thereafter, and until the accident, the plaintiff was employed by the defendant company—a period of about 14 months. The defendant contends that "the fraud perpetrated upon the defendant by the plaintiff in his attempt to secure employment deprived him of the right to claim the benefits accruing to 'employees' under the provisions of the Federal Employers' Liability Act." The defendant concedes, in the oral argument, that the physical condition of the plaintiff at the time of the accident did not contribute in any way to his injury.

The only decision of an Appellate Court that the defendant cites that supports its contention is *Norfolk & W. R. Co. v. Bondurant's Adm'r,* 107 Va. 515. There the court held that a rule of a railroad company which forbids the employment of infants in its train service is a reasonable one, and that an infant who, with knowledge of such rule, obtains service with the company by falsely representing himself to be of age, and is

injured in the course of such service by reason of the negligence of the company's servants, cannot recover damages of the company for such injury, although his infancy in no way contributed to his injury; that his position is that of a trespasser, or at most a bare licensee, to whom the company stands in no contractual relation and owes no other duty than not to injure him recklessly, wantonly or wilfully. This ruling is based upon the decision in *Fitzmaurice v. New York, N. H. & H. R. Co.*, 192 Mass. 159. After a careful consideration of this last decision, we have reached the conclusion that it is not an authority for the ruling in the Virginia case. In the well-considered case of *Lupher v. Atchison, T. & S. F. Ry. Co.*, 81 Kan. 585, the distinction between the two cases is so well pointed out that we will content ourselves by quoting therefrom:

"That case (*Norfolk & W. R. Co. v. Bondurant's Adm'r, supra*) in turn is founded expressly upon *Fitzmaurice v. New York, N. H. & H. R. Co.*, 192 Mass. 159, and the citations in a note thereto in 6 L. R. A. (N. S.) 1146. The substance of the Massachusetts case is that one who uses a railroad ticket obtained at a reduced rate by fraudulent representations is not a passenger in the sense of being entitled to protection as such, and stands in no better position than a mere trespasser. This is the general doctrine, to which there seems to be no dissent. (6 Cyc. 538.) The Virginia court took the view that by parity of reasoning one who obtains employment from a railway company by a false statement as to his age is prevented by his fraudulent act from becoming an employee. We think the two situations are obviously dissimilar. The analogy is not close enough to warrant the application of the same rule. Among other differences may be noted this: In the one instance a person desiring to be transported from one point to another fraudulently procures the railway company to render him that service, a service which is wholly for his benefit, and in which the company has no interest whatever; he ob-

606   APPELLATE COURTS OF ILLINOIS.

Rock v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 247 Ill. App. 600.

tains by false pretenses something of value to himself for which he renders no equivalent. In the other the seeker of employment does, it is true, procure his contract by false representations, but having obtained it he begins the performance of service for the benefit of the company and renders it an equivalent for all that he receives from it. True, the company could at its option upon discovery of the deceit discharge him at · any moment (26 Cyc. 989), but even then he would be entitled to compensation for the time he had served, not necessarily at the agreed rate, but according to the reasonable value of his services. (*Anstee v. Ober,* 26 Mo. App. 665.) The relation of master and servant exists in virtue of the one party performing valuable services which are accepted and paid for by the other.''

The only other case cited by the defendant, where the facts are analogous to those of the case at bar, is *Stafford v. Baltimore & O. R. Co.,* 262 Fed. 807. This decision was by a *nisi prius* court and it was rendered on a motion by the plaintiff to strike a special plea of the defendant alleging that the plaintiff, being over the age prescribed by the rules of the company and unable to pass the physical examination required by the rules, procured another, who was competent, to make application and take the examination, and by means of a certificate thus obtained, secured the position. The decision denying the motion to strike was largely based upon *Norfolk & W. R. Co. v. Bondurant's Adm'r, supra.* The court held that a number of questions might arise on the trial that could not be determined in advance on the motion to strike the plea and that ''without further discussion, it seems· to me clear, whatever principle may be applied, that it cannot be here relied on to the extent of rejecting this plea offhand, and forbidding the matters set up in it, if proven, from becoming pertinent to the issues to be determined on the trial.'' It would seem fairly clear from a reading of the decision that the trial court did not intend to hold that the mere fraudulent act of the employee

in obtaining employment prevented the relation of master and servant from existing between him and the railroad company at the time he was injured. The motion in *Stafford v. Baltimore & O. R. Co., supra,* was decided in November, 1919. In October, 1922, *Payne v. Daugherty,* 283 Fed. 353, was decided by the Circuit Court of Appeals, Eighth Circuit. That decision is clearly adverse to the present contention of the defendant. There the court says:

"A principal contention, embraced in a number of assignments, is that the trial court erred in excluding evidence offered to defeat the action, on the ground that the plaintiff fraudulently secured his employment, as pleaded, and in refusing instructions tendering such defense. In our opinion, the rulings were correct. The complaint is not that proof is incompetent which tended to attribute the fall from the car to prior injury or affliction. That is far different from permitting a retroactive dissolution of the relation of master and servant, by virtue of the contract, which, even if voidable, was, while it subsisted, attended with the duty, required by law, for the safety of the latter. Cases are cited involving different facts, but of contrary import in principle. We regard the decisions such as *Lupher v. Atchison, T. & S. F. Ry. Co.,* 81 Kan. 585, 106 Pac. 284, 25 L. R. A. (N. S.) 707, as declaring the sound and just rule, namely, that there is liability to the employee, notwithstanding the inducement to the contract."

*Lupher v. Atchison, T. & S. F. Ry. Co., supra,* is, apparently, the leading case on the present question. It is so considered in *Payne v. Daugherty, supra.* We have heretofore quoted from the Kansas case sufficiently to show that it is directly opposed to the contention of the defendant. In *Baker v. Beattie,* — Tex. Civ. App. —, 222 S. W. 658, the facts are analogous to those in the instant case. The Court of Civil Appeals of Texas, in overruling the contention of the defendant that the contract of employment between

608    APPELLATE COURTS OF ILLINOIS.

Rock v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 247 Ill. App. 600.

the parties was void and the relation of master and servant did not exist, said:

"The contract of employment not being rescinded or canceled at the time of the injury, the appellee would be held to be an employee of the appellant. The contract of employment would not be absolutely void because of the alleged fraudulent statements. The alleged fraudulent statements would only afford grounds for a voidance or annulment of the contract of employment at the option of the company. And until the contract of employment was actually terminated by the company on the ground of the alleged fraudulent statements, the relation of master and servant would legally continue and exist." (See also *Lake Shore & M. S. Ry. Co. v. Baldwin,* 19 Ohio C. C. 338.) A number of cases might be cited in which the courts have held that if a minor applicant for employment untruthfully represents himself to be of age in order to secure employment, and such representation is believed by his employer, he is not thereby barred from a recovery for injuries which he may suffer by the negligence of his employer, but we do not, however, regard these cases as having the same force as cases in which adults are involved for the reason that statutory provisions and questions of public policy seem to enter into cases where minors are concerned.

After a careful consideration of the question, we have reached the conclusion that at the time the plaintiff sustained the injury in question the relation of master and servant existed between him and the defendant, and the contention of the defendant is, therefore, not sustained.

The defendant contends that "the verdict of the jury is contrary to the manifest weight of the evidence." In the brief of each party pages are devoted to this contention and the weight of the facts and circumstances and the credibility of the witnesses are therein discussed at great length. In our judgment it would serve no useful purpose to set out and review

the evidence of the respective parties. We are satisfied, after a very careful consideration of the present contention, that we cannot say that the verdict of the jury is contrary to the manifest weight of the evidence. The plaintiff testified that a bright headlight on the Belt transfer engine blinded him so that he could not and did not see the caboose train that struck him coming until it was about ten feet away from him. The defendant strenuously contends that the evidence overwhelmingly shows that the headlight upon the transfer engine at the time of the accident was a dim one, and apparently argues that if it be conceded that the light was a dim one the case of the plaintiff falls. Without passing upon the contention of the defendant that the testimony of the plaintiff as to the light is without corroboration in the evidence, nevertheless, if it be assumed that the light was dim, still, as we read the record, the plaintiff made out a clear prima facie case of negligence against the defendant. It must be noted in this connection that the first count of the declaration is a general negligence count. In its argument the defendant apparently insists that the plaintiff was guilty of negligence. The burden of proving contributory negligence under the Federal Employers' Liability Act is on the defendant (*Fisher v. Chicago, R. I. & P. R. Co.*, 290 Ill. 49), and even if the plaintiff was guilty of contributory negligence, that fact, alone, would not bar a recovery but would mitigate the damages (*Fisher v. Chicago, R. I. & P. R. Co., supra*), and in the present case the jury was properly instructed on that subject, and as the defendant does not complain of the amount of the verdict, it is fair to assume that defendant is satisfied that the jury, if it found the plaintiff guilty of contributory negligence, took that fact into consideration in assessing the damages.

The defendant contends that "the plaintiff is not entitled to recover for the injuries claimed because such injuries resulted from the dangers incident to his employment, the risk of which he assumed."

610     APPELLATE COURTS OF ILLINOIS.

Rock v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 247 Ill. App. 600.

The accident occurred between 8 and 9 p. m., and at a point where certain lead tracks lead from the main lines to switch tracks. The plaintiff at the time was crossing the tracks at a crossway that employees habitually used in going about their work. The plaintiff saw a Belt Line train, consisting of about 80 cars, approaching from the south at a very slow speed, and it was natural for him to start across the tracks, in front of that long train, in order to get back to his work, as his "lunch" period was about up, and it would seem that he had time to safely cross in front of it. In any event, he did pass in front of it safely. About the time that he started to cross the tracks there was standing on a track 15 feet beyond that upon which the Belt Line train was approaching, and east of it, a train made up of an engine and tender and two cabooses. This train, apparently about the time that plaintiff was crossing in front of the Belt Line train, and without the knowledge of the plaintiff, was started northward, with the cabooses in front, was shoved by the engine between 20 and 35 feet, when the plaintiff, who was then passing over the track upon which the caboose train was coming, was hit by the foremost caboose and sustained the injuries of which he complains. It is clear from the evidence that there was no ringing of the bell on the locomotive of the caboose train, nor was there any signal or warning given of the start or approach of this train, nor was there any lookout with a light on the foremost caboose. In fact, the defendant offered no proof to the contrary and its contention, with reference thereto, is that the plaintiff assumed the risk incident to such a method of operation. It was the intention of the crew of the caboose train to cut the cabooses from the engine and tender and to "kick them" onto a switchtrack. The plaintiff introduced evidence that it was the custom and practice when cars and cabooses were shoved at night over the lead track where this accident happened, to have a man on the foremost car with a light. The defendant

introduced evidence to rebut that offered by the plaintiff, but after a careful analysis of all the testimony in relation thereto, we are satisfied that the jury were warranted in finding that there was such a custom. The accident occurred at night, and the manner in which the caboose train was handled showed such a disregard for the safety of the employees that might be using the crossway that the jury, in view of all the facts and circumstances bearing on the subject, might well have refused to believe the contention of the defendant that the method of operation of the caboose train at the time and place in question was a customary one and known to the plaintiff. At the request of the defendant the trial court instructed the jury fully as to the law of assumed risk. It was a question of fact— not of law—whether the injury received by the plaintiff was occasioned by or through a peril of his employment, the risk of which he had assumed. The jury, by their verdict, have found in favor of the plaintiff on this issue and we feel that we would not be justified in disturbing this finding.

The only other contention of the defendant amounts to an assertion that the defendant has the right to have the present judgment passed upon by the federal courts.

The defendant makes no complaint as to any instructions given or refused, nor as to any ruling of the trial court in the matter of evidence, nor that the amount of the verdict is excessive. Neither the conduct of the trial court nor the counsel for the plaintiff is criticized, and it would appear that the defendant has had a fair and impartial trial.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.