## Lally v. Cochran.

(Decided October 22, 1929.)

WHEELER & HUGHES for appellant.

C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment for $3,000 in favor of appellee for personal injuries sustained in an automobile accident, alleged to be due to the negligence of appellant. The facts are these:

Mrs. Lally and Mrs. Cochran, who reside in Paducah, were friends, and their sons were in school at Bardstown. Mrs. Lally invited Mrs. Cochran to drive with her to Louisville and bring the boys back home. They went to Louisville on December 20, 1928, and returned the next morning. On their return trip they had left the concrete and were driving on loose gravel. Mrs. Cochran and her son both say that she had cautioned Mrs. Lally about driving so fast, and that they both looked at the speedometer just before the accident, and that she was then driving between 50 and 55 miles an hour. Suddenly the car began to go from side to side, and then left the road and turned over. Mrs. Cochran was thrown against the steering wheel and received the injuries of which she complains. According to Mrs. Lally and her son, the speed of the car was only 30 or 35 miles an hour. As they were going down a hill, the right back wheel struck a rut or rock, and they had a blowout. When this occurred, the car swerved to the right, and, as Mrs. Lally tried to steer it back into the road, it swerved over into a ditch 3 or 4 feet deep, and turned over a barbed wire fence.

It is first claimed that the court erred in instructing the jury that it was the duty of the defendant "to drive at a reasonable rate of speed, considering the condition of the road at said time and place." The argument is that the court should not have instructed on a question not made an issue by the pleadings, and should not have singled out or have called attention to a special or material fact in the case. As appellee was relying on appellant's negligence, and not on the condition of the road, as the contributing cause of her injuries, it was not necessary for her to plead the condition of the road. However, it must not be overlooked that negligence is not a fixed and invariable thing, but depends on the circumstances. Consequently, a rate of speed that is reasonable on a concrete road may be altogether unreasonable on a loose gravel road. To the end that the jury might determine the question of negligence in the light of all

the facts and circumstances, it was entirely proper to permit the witnesses to testify as to the character of the road, and equally proper for the court to tell the jury that it was the duty of the defendant "to drive at a reasonable rate of speed, considering the condition of the road at said time and place." In doing this the court did not assume as a fact that the condition of the road was bad, but made appellant's duty turn on whatever might be the condition of the road. We therefore rule that the instruction was not erroneous.

The further point is made that the verdict is excessive. In this connection attention is called to the fact that appellee was brought into the courtroom on a litter, surrounded by members of her family and attendants, and that she actually had a hemorrhage in the presence of the jury. We know of no way to prevent a party from attending a trial. Of course, she may take advantage of her right, and stage a scene that may excite the sympathy or passion of the jury; but that is a matter that must be dealt with by evidence or argument. However, we may deal with the question of damages, and set aside the verdict, if excessive, without regard to the inducing cause.

The attending physician testified that he found appellee's back and leg bruised, and a place on her side that was hurting her. The injury to her back and leg did not amount to much, but the bruised spot did. The injury was near the breast bone. The ribs were not broken, but seemed to be bent in. Appellee developed a congestion of the lungs, a pleurisy, and was very sick for two or three weeks. From his observation, she had suffered pain. She had spat up a little blood in his presence, but did not have a hemorrhage. However, he saw the blood there in a vessel. In his opinion, the accident caused her injury, and he would say that her condition was permanent. The physician who took the X-ray testified that appellee came in on a stretcher and was very weak looking; she had a hemorrhage while in the X-ray room. The X-ray did not show any injury to the bone. He thought that, without breaking the rib, it could strike a blow in such a way as to cause a traumatic condition of the lungs. He did not recall such a case. He thought that, after a period of that many days, if there were no underlying conditions there previously, it would be doubtful if the blood came from the automobile accident. However, he had no idea where the blood came from. The X-ray

which he took was to find out if there was a fractured rib, and the lung tissue did not show at all. The picture was made to bring out the bone details.

According to appellee she had suffered terrible pain since the accident. She had her first hemorrhage on the third or fourth day. She had not been engaged in her household duties, but had been in bed all the time. The pain was on the inside and through her back. Before the accident her health was good, and she had never had a hemorrhage. Mrs. Elizabeth Martena testified that appellee had been confined to her bed ever since the accident and had suffered very much. She had seen her have five hemorrhages. The hemorrhages she had had were like the one she had that morning. As much as a pint of blood came from her mouth. She had known appellee for 15 years, and was associated with her daily. Before the accident her health was good, and she had never had any hemorrhages. Appellee's daughter testified to the same effect. H. J. Pugsley, an insurance agent, testified that he saw appellee, and she looked very sick. While there she had a hemorrhage. Robert Crane testified that he was at appellee's home, and saw her have a hemorrhage. She was in a critical condition, and spat up about a pint of blood. Mrs. Ford, who had visited appellee every few days, saw appellee have two hemorrhages. The state of appellee's health was good before the accident.

From this evidence it will be seen that the case is one where appellee was shown to have enjoyed good health and never to have had a hemorrhage prior to the accident. The trial took place about two months after the accident. During those two months she was confined to her bed, had several hemorrhages, and suffered a great deal. In view of the state of her health prior to the accident, it is a fair inference that her present condition is attributable to the accident. There is the suggestion that appellee was malingering, but appellant did not ask that she be examined by a physician, or offer any evidence tending to overcome that given by appellee and her witnesses. In the circumstances, it hardly can be said that the verdict is excessive.

Judgment affirmed.