## Southern Mining Co. v. Hensley.

(Decided Nov. 15, 1932.)

N. R. PATTERSON for appellant.
GOLDEN, GILBERT & GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Louis Hensley brought this suit against the Southern Mining Company to recover damages for personal injuries. From a verdict and judgment in his favor for $5,600.00, the mining company appeals.

Though appellant, because of its failure to accept the provisions of the Workmen's Compensation Act (Ky. Stat. sec. 4880 et seq.), could not defend on the usual grounds of contributory negligence, negligence of a fellow servant, or assumption of risk, section 4960, Kentucky Statutes, actual negligence on its part was essential to a recovery. Horse Creek Mining Company v. Frazier's Adm'x, 224 Ky. 211, 5 S. W. (2d) 1064.

Liability was predicated on appellant's failure to

furnish appellee a reasonably safe place to work, and reasonably safe appliances and equipment with which to work. The defense was a general denial, and a plea that appellee had violated the rules of the company.

The principal ground of negligence was the failure of the company to equip with guards the bumper of the motor on which appellee was standing at the time of the accident. There was evidence that this was necessary to prevent the cars from riding the bumper; that the new motors were so equipped; that the motor in question was an old motor, and there were no guards on the bumper, and this fact was known to those in charge of the mine.

Appellant's first insistence is that at the time of the accident the relation of master and servant was suspended, and appellee was not at a place where appellant owed him any duty.

The evidence discloses the following situation: On the occasion in question appellee was a coupler after the motor. He and the motorman, Charlie Lawson, had gone outside of the mine to haul into the mine a trip of empty cars. They started with 48 empties, but six of these cars had been detached without the knowledge of appellee or the motorman. In order to avoid a wreck they determined to sidetrack the 42 empties and then go back and search for the lost cars. Near a switch leading off from the main line appellee got off and counted the cars, and threw the switches so that the empties could be placed on the side track. He then waited until the motor came along and got on the bumper for the purpose of uncoupling the motor from the car. At that time he had only a few feet to go. While in this position the third mine car in front of appellee split the switch, causing the trip to buckle and the car immediately in front of appellee to ride up over the bumper and mash his foot. It is claimed that it was no part of appellee's duty to climb on the motor and ride it to the point where it was to be uncoupled in the trip of cars. It was his duty to uncouple the motor and ride the motor back for the purpose of getting the other cars. According to his evidence there was plenty of room for him to stand on the bumper, and he rode where he usually rode, and the other couplers rode, in the performance of their duties. The coupling was on the motor. It was dangerous to un-

couple from the ground, and he could not have uncoupled from the empty next to the motor. Furthermore he could not have accompanied the motor in search of the lost cars if he had remained on the ground or had gotten into the empty next to the motor. To accompany the motor he had to get on it, and it can hardly be said that his getting on the motor five or six feet from where the uncoupling was to be done, was in any sense a departure from the work in which he was engaged, or which he was expected to perform. On the contrary, he was at a place where it was necessary for him to be in order to do the work of uncoupling with the least danger, and to accompany the motor on its trip to find the lost cars. In the circumstances it cannot be said that appellee was at a place where the company owed him no duty.

(2) Among the rules of the company was the following:

"No one but motormen and brakemen shall be allowed to ride motors at any time. Brakemen shall ride in empty cars on empty trips and on the bumper of the last car on loaded trips, and on trips running without cars the brakeman may ride, if possible, on the seat with the motorman, or on the rear bumper of motor. No one shall ride on top of motors at any time, within the mines."

It is insisted that appellee cannot recover because of his violation of the foregoing rule, and that the evidence that the rule was habitually disregarded with the knowledge or acquiescence of appellent, its agents, and servants, superior in authority to appellee, was not sufficient to show that the rule was not in force. Whether a coupler who gets on the bumper of the motor only five or six feet away from the place where he is to do the uncoupling, is engaged in riding within the meaning of the rule, we need not determine. In speaking of the rule appellee testified as follows:

"I wasn't riding the motor, I rode the empties in there, the rule is they told you not to ride it, but still they didn't make you obey all rules, they stood there and watched you pass on the motor, on the end of them, they never say anything to you about it."

Appellee further testified that he usually rode on

the bumper in the presence of the mine foreman and assistant mine foreman. Burlington Childers, the trapper and a witness for the company, testified that the couplers customarily rode "anywhere they wanted to," "anywhere they got on." Tom Jones, the assistant mine foreman, testified as follows:

"Q. Did you ever authorize Mr. Hensley or anybody else to violate any of these rules? A. I did not.

"Q. Did you know they were being violated? A. Well, sometimes I knew they was and part of the time I didn't.

"Q. Did you ever call their attention to it when they violated the rules? A. I did."

The only reasonable deduction from appellee's evidence is that he referred to those in charge of the mines when he used the word "they," and there can be no doubt that his evidence, coupled with the evidence of the trapper, that the couplers customarily rode anywhere they wanted to, and anywhere they got on, and the further evidence of the assistant mine foreman that he sometimes knew the rules were being violated and part of the time he did not, was sufficient to make it a question for the jury whether the rule in question was habitually disregarded with the knowledge or acquiescence of the company's agents and servants, superior in authority to appellee.

Appellee's foot was badly mashed. Several of his toes are out of alignment and he has to walk on the side of his foot. He has not been able to work since the accident. He cannot get a job, and is unable to pass a medical examination necessary to secure employment. His foot is deformed and the injury is permanent. In view of these injuries, and of the mental and physical suffering which he has endured, and will endure as a necessary result thereof, it cannot be said that the verdict of $5,600 is excessive.

Judgment affirmed.