# Southern Mining Co. v. Childers.

May 24, 1940.

James M. Gilbert, Judge.

H. ·C. Gillis and Logan E. Patterson for appellant.

Richard Priest Dietzman and Golden & Lay for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellee and plaintiff below, Charles Childers, was 57 years of age at the time of the filing of this action in the Bell circuit court on June 17, 1938, against the appellant and defendant below, Southern Mining Company. Defendant is a corporation and operates a coal mining plant in Bell county. Prior to the accident producing the injuries complained of by plaintiff he was, and had been in the employ of defendant for more than 15 years as an electrician, whose chief and, perhaps, sole duty was to look after and keep in repair the electric motors moving the mining cars of defendant into and out of its mine. The office occupied by plaintiff while not engaged in actually repairing motors was on the outside of the mouth of the mine, and in which he had a telephone that could be connected from some central office or switchboard with telephones scattered throughout the mining operations underground. He received notice in the latter part of the afternoon on March 5, 1938, that his services were needed to repair a motor back in the mine some mile or more from its mouth, to which place he immediately went. After making the repairs for which he was called a mining train of some 25 or more cars was starting—or about to start—out of the mine with its loadings of coal. The operator of the motor of that train was not a regular motorman, but was serving in that capacity on the occasion and he was

well acquainted with plaintiff, who had ridden on a number of occasions on the motor of trains entering or coming out of the mine and where the motorman of the instant and alleged negligent train was a member of the crew. So that, the alleged guilty motorman of the outgoing train on the particular occasion not only knew plaintiff personally but also knew that he frequently rode the motor in going into and coming out of the mine while discharging his duties as electrician hereinbefore described. The mine was equipped with electrical signals arranged along sections of the track whereby a motorman became informed whether or not another train traveling in either direction was within the section being entered upon. Plaintiff in boarding the train to make his exit from the mine was expressly invited by the motorman to take a seat on the motor, as he had habitually done continuously theretofore and which he did on this occasion. After plaintiff boarded the train it passed one of the signal stations, which at that time indicated that there was another train in the section then entered, but the motorman, notwithstanding such obtained information from the signal, continued to go forward, down grade, and, according to the proof, at a dangerous rate of speed. A sharp curve was made, ahead of which was a straight track and upon rounding the curve the obstructing train which the passed signal indicated was upon that section of the track, was discovered ahead. It had stopped and was stationary because of a broken wheel on one of the cars composing it, or upon the motor. Brakemen on that obstructing train were waving signals for the protection of others who might be approaching when such discovery was made, but the motorman on the on-coming train upon which plaintiff was riding could not stop it within time to prevent a collision—the proof showing that he was not only going down grade with his train, but had his motor open to 4/5 of its full power.

Seeing that the collision was inevitable both the motorman and plaintiff jumped from the motor just immediately before the collision, and in doing so plaintiff hit the sidewall of the tunnel, whereby his body was thrown back under some portion of the train upon which he was riding whereby he lost his right leg—the amputation being between the ankle and the knee—his large toe and the one next to it of his left foot and a severe crush-

ing of the bones in that foot. He recovered from the amputation of his right leg, but the injury to his left foot caused him great pain and suffering, long confinement in the hospital, and large medical and hospital fees. Such results from that foot were entailed because of blood poison setting up in it and the difficulty of extracting crushed bones in its other parts.

Plaintiff filed this action against defendant in the Bell circuit court to recover damages for his injuries, alleging in the petition that "defendant, its agents and servants in charge of said motor and trip of cars, with gross negligence and carelessness, so operated same that it was caused to run into another trip of cars in its said mine and wreck said motor and said cars." He followed that general allegation with setting out the facts above stated, and averred that the defendant was entitled to operate under our Workmen's Compensation Act, Kentucky Statutes, section 4880 et seq., but that it had failed to do so. He sought damages in the sum of $25,800. The answer was a denial of the material averments of the petition with an affirmative plea of contributory negligence which was charged to be the sole cause of plaintiff's injuries. Another paragraph of the answer alleged an indebtedness due from plaintiff to defendant for supplies furnished him from defendant's commissary, amounting to $554.09, and still another paragraph averred that when injured plaintiff was violating a rule of the defendant, saying in part, "No one but motormen and brakemen shall be allowed to ride motors at any time," etc. It averred plaintiff's knowledge of that rule and that in violation thereof he was riding one of defendant's motors at the time he was injured.

Plaintiff's reply denied all affirmative allegations of the answer, except he admitted the existence of the rule, but averred that it was long since abandoned—especially as applicable to himself in the performance of his duties—by and through, not only acquiescence of defendant and its superior officers permitting him to ride in and out of the mine on the motor, but also by expressly directing and permitting him to do so, and which avoidance of the effect of the rule was most conclusively proven at the trial and undenied by any witness. Following pleadings made the issues and the jury under the instructions submitted to it by the court returned a ver-

dict in favor of plaintiffs for the sum of $17,600, to be credited with the amount of the set-off pleaded by defendant, which latter in all probability was erroneous, but of which no complaint is made. Defendant's motion for a new trial was overruled, and from the verdict in favor of plaintiff and the judgment pronounced thereon it prosecutes this appeal. The general grounds urged for a reversal of the judgment are: (1) The court erred in overruling defendant's motion for a continuance; (2) that it also erred in overruling defendant's motion for a peremptory instruction in its favor made at the close of plaintiff's evidence and repeated at the close of all of the evidence; (3) improper and erroneous instructions; and (4) that the verdict is excessive. They will be briefly considered and determined in the order named.

1. The ground urged for a continuance was the fact that plaintiff at the time of the trial was brought into the courthouse on a cot—he at the time being wholly unable from the effects of his injuries to appear in any other manner—and which it is claimed prejudicially affected defendant's right and influenced the jury in rendering its verdict. But that argument of learned counsel in support of this alleged error is entirely nonconvincing. To begin with it is bottomed upon the necessary contention that a defendant in a tort action charged with wrongfully inflicting personal injuries is entitled to postpone the trial until the injured victim has entirely recovered from the effect of his injuries, which may never happen during his life-time, and which proposition is absurd and barely short of preposterous. However, in three late cases the direct question was involved and the contention made overruled by us, and which are Ashland Coca Cola Bottling Company v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52; Lally v. Cochran, 231 Ky. 211, 21 S. W. (2d) 272, 273; and Powell v. Galloway, 229 Ky. 37, 16 S. W. (2d) 489. Two prior cases to the same effect are Ford v. Providence Coal Company, 124 Ky. 517, 99 S. W. 609, 30 Ky. Law Rep. 698, and Newport News & Mississippi Valley Company v. Carroll, 31 S. W. 132, 17 Ky. Law Rep. 374. Without more extended discussion we unhesitatingly conclude that this ground is without merit.

2. In arguing ground (2) learned counsel for defendant attempts to support it upon a number of alleged reasons, each of which is vigorously presented, but the

fallacy of each is glaringly apparent and the cases cited in support of them are not applicable because of the difference between their facts and those appearing in the instant one. For instance, this ground is urged because it is claimed that (a) plaintiff was a trespasser upon defendant's motor at the time of his injury, and (b) that at most he was but a licensee, and that being such he must take the premises as he finds them and that the licensor (defendant herein) "is only liable for an intentional or affirmative act of negligence," since, as argued, it owed plaintiff no duty "unless his danger was discovered in time to have prevented his injury." The contention that plaintiff was only a licensee to whom defendant only owed the duty contended for is, of course, rested upon the theory that plaintiff at the time was violating defendant's rule in riding on the motor which, of course, pays no heed to the fact of the abandonment of that rule (especially insofar as plaintiff was concerned) for a long continuous period preceding the accident, and which had the effect of rendering it nugatory so far as he was concerned, and which consequence we have declared and adjudged in every case brought before us involving the question. However, if it were otherwise, and plaintiff could be treated as a licensee, then it is conceded that he was entitled to the appropriate care to avoid injuring him after his peril was discovered. His peril in this case was discovered by the negligent servant of defendant when he carried his train past the signal station which then indicated danger ahead, and when that same servant recklessly ran his train downgrade at an excessive rate of speed, with at least imputed knowledge that an obstruction to the track on which he was traveling was ahead of him.

It is also argued in support of this ground that, since plaintiff was violating the rule, he was guilty of such contributory negligence as to make it the sole cause of his injury. In the first place the premise of "sole cause" is untrue, and secondly, the rule had been set aside and annulled so far as plaintiff was concerned, and it no longer had application to him. This ground is also attempted to be sustained because of certain criticisms of plaintiff's pleadings—each and all of which we have carefully examined and found them to be unsupported, since the pleadings are, in substance,

as hereinbefore outlined, and which tendered the issues of whether or not defendant or its servant was negligent in the operation of the train on which plaintiff was riding at the time, and whether or not plaintiff was negligent to the extent that his negligence solely produced his injuries, and which latter contention is entirely rested upon the claim of his alleged violation of defendant's rule. The fact that the rule relied on became abandoned under the proven facts—at least so far as plaintiff was concerned—is amply supported by the cases of Southern Mining Company (same defendant) v. Hensley, 247 Ky. 276, 56 S. W. (2d) 965; Anderson's Adm'r v. Granville Coal Company, 205 Ky. 111, 265 S. W. 472; and Memphis Mining Company v. Shacklett, 153 Ky. 476, 155 S. W. 1154. Other reasons of even less merit are put forward in brief of counsel in support of this ground, but in the language employed by Judge Du Relle in writing for this court its opinion in the case of Fehler v. Gosnell, 99 Ky. 380, 35 S. W. 1125, 1126, we feel that we might say: "Without undertaking to answer in detail the ingenious argument of counsel for appellants, it is sufficient to say that, in our opinion" every reason urged in support of this ground has heretofore been determined by us adversely to counsel's contention in numerous cases heretofore decided, and such holdings have become firmly settled in this jurisdiction. We, therefore, conclude that this ground is also without merit.

3. Ground (3), as argued in brief, not only criticises the instructions given by the court, but also complains of its rejection of instructions A and B offered by defendant. Instruction A directs a verdict for the defendant if the jury believed plaintiff was riding the motor contrary to defendant's rule supra, which we have already disallowed in former parts of this opinion. Instruction B directed a finding for defendant if the jury believed that plaintiff crowded the motorman of the train upon which he was riding off his seat and forced him (the motorman) to occupy and ride upon a place where he was less able to perform his duties as such. That instruction would not be authorized in the circumstances of the case even if it was true, but there was no proof in the case authorizing such an instruction and which could be easily established by the insertion of the evidence, which it is claimed established that fact,

but which for the sake of brevity will not be done. The court, therefore, did not err in rejecting both of defendant's offered instructions. The instruction of which the most criticism is made in briefs, is No. 2 offered by plaintiff, and which was directed to the same matters attempted to be presented in defendant's offered instructions. A and B. It told the jury, in substance, that if plaintiff was riding defendant's motor in violation of one of its rules, or if he at the time took possession of the motorman's seat on the motor and crowded the latter off of it and compelled him to ride at a place and in a position that disabled him from careful management of the train and that such violation and such conduct on the part of plaintiff solely produced the collision, then the law was for defendant and the jury should so find. That part of the instruction was clearly more than defendant was entitled to, because of several reasons, chiefly among which is that they were each unsupported by the testimony. However, the instruction further said to the jury that if it believed from the evidence that the rule had been abandoned in the manner hereinbefore pointed out, plaintiff could not be charged with negligence in riding upon the motor contrary to the provisions of that rule. The instruction furthermore said to the jury that if defendant was negligent as set out in instruction No. 1, and—as charged in the answer—plaintiff was also negligent which only concurred with defendant's negligence in producing the injury, then plaintiff's negligence could have no defensive effect under the provisions of our Workmen's Compensation Act, because defendant had declined to operate under it.

The criticisms of that instruction are bottomed on the same questions hereinbefore discussed and disposed of, i. e., the effect of all acts of alleged contributory negligence on the part of plaintiff as solely producing his injuries resulting from the collision, and ignoring altogether the undoubted proven negligence on the part of defendant's agent—the motorman—in the operation of the motor pulling the train upon which plaintiff was riding. Extremely technical and wholly unfounded criticism is made of other instructions given by the court, but they are so clearly unfounded and so thoroughly wanting in merit that we have concluded to pass them without discussion, and which brings us to

the last and only plausible ground for a reversal, which is the one embodied in ground (4), that the verdict is excessive, and to the determination of which we will now proceed.

4. At the beginning we call attention to what we have already said were the physical injuries and the sufferings—as well as large financial expense—sustained by plaintiff. There should be added thereto the further fact—proven by undisputed testimony—to the effect that the infection of plaintiff's left foot, which proved to be so stubborn and difficult to overcome, permanently affected his heart so as to impair his physical ability to labor, even though he might otherwise be capable of doing so. Therefore, the case might well be determined from the standpoint of permanent destruction of plaintiff's ability to earn money for the remainder of his life. At the time he was injured plaintiff had an expectancy of slightly more than 17 years, and his earning capacity theretofore was around $1,800 per year. The verdict is, therefore, $13,000 less (in round numbers) than what he would have earned for the remainder of his expectancy had he lived that long as measured by his earning capacity at the time he was injured. But that calculation does not take into consideration the uncontradicted proof of plaintiff's pain and suffering which are recoverable items of damages in such actions.

An examination of the law, as declared by this and other courts, reveals the fact that verdicts in this character of case are never capable of accurate measurement, since the contrariety of facts upon which they are measured are to a great extent both speculative and uncertain. Therefore, the jury trying the case is always vested with a large discretion to be exercised in view of the facts of each case, and as long as its verdict may be sustained by any view of the testimony that might be taken and does not appear to have been returned under the influence of passion and prejudice, it is not within the province of the court to interfere with it.

Another consideration should not be overlooked, and which is, that "A larger verdict may be sustained for wrecking the living body than for the infliction of death"—a declaration made in the case of Kentucky

Distilleries & Warehouse Company v. Wells' Guardian, 149 Ky. 275, 148 S. W. 375, 381, and followed in effect in the later case of Warfield Natural Gas Company v. Wright, 246 Ky. 208, 54 S. W. (2d) 666. In the latter case one of the plaintiffs recovered $45,000 and the other one $15,000—which verdicts were upheld by this court. Other domestic cases sustaining larger verdicts, and others practically as large as the one in the instant case, are Mealy v. Ewen, 225 Ky. 117, 7 S. W. (2d) 823, 825; Chesapeake & O. R. Co. v. Kornhoff, 167 Ky. 353, 180 S. W. 523; Standard Oil Company v. Titus, 187 Ky. 560, 219 S. W. 1077; Louisville & N. R. Co. v. Carter, 226 Ky. 561, 10 S. W. (2d) 1064; Chesapeake & O. R. Co. v. Stapleton's Guardian, 223 Ky. 154, 3 S. W. (2d) 209; Louisville & N. R. Co. v. Lewis, 218 Ky. 197, 291 S. W. 401, and many others that could be cited. In the cited ones the verdict ranged from $45,000 to $12,500, and in none of them was the plaintiff much more severely injured—if any at all—or more thoroughly or completely deprived of power to earn money than was the plaintiff as a result of his injuries in this case. From the premises we reiterated at the beginning of the discussion of this ground it is clear that it can not be said under the undisputably proven facts that the verdict of the jury is so excessive as to require a reversal of the judgment on that ground. Our determination with respect thereto could be more conclusively demonstrated were we to devote more time and space in reviewing other domestic cases as well as foreign ones involving the same question, but we are convinced that what we have already said abundantly justifies the overruling of this ground, which is accordingly done.

Wherefore, for the reasons stated, the judgment is affirmed.