## Memphis Mining Company v. Shacklett.

(Decided April 30, 1913.)

### Appeal from McLean Circuit Court.

1. Master and Servant—Injury from Fall of Slate From Mine Roof— Submission to Jury—Sufficiency of Evidence.—In an action by a servant for damages for injuries sustained by slate falling from mine roof on him, held, that there was sufficient evidence as to the unsafe condition of the roof of the entry, and that such condition had been called to the attention of the officers of the company, to authorize the submission of that question to the jury.

2. Master and Servant—Submission to Jury—Verdict.—The conflict on this question was sharp, but as it was properly submitted to the jury, their verdict will not be disturbed.

3. Master and Servant—Mixed Question of Law and Fact—Evidence —Submission to Jury.—Whether the relation of master and servant exists is a mixed question of law and fact, and must be submitted to the jury under proper instructions where there is conflict in the evidence.

**4.** Master and Servant—Where Rules Established by Master Are Habitually Disobeyed With Master's Knowledge—Waiver of Rules. —Where the rules and regulations established by the master are habitually disobeyed, with the knowledge or express consent of the master, or have been disregarded without his express consent in such manner as to raise a presumption that he must have become aware of their habitual disregard, and approved the same, such rules and regulations will be regarded as waived.

R. P. ROWE and WATTS, DAVIS & DAVIS for appellant.

RICHARD ALEXANDER, LA VEGA CLEMENTS and BEN D. RINGO for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In September, 1911, appellee was injured in the main entrance to appellant's mine and while employed, as he claims, by it; alleging that the injury was the result of appellant's negligence, he instituted this action wherein he recovered a judgment for $2,950, and the company appeals.

The negligence alleged is that appellant failed to keep the roof of the main entry to its mine in a reasonably safe condition by sufficiently propping or supporting the same, whereby it was permitted to become and remain in a dangerous condition.

The appellant answered, and in addition to traversing the allegations of negligence, denied that appellee was employed by it at the time of the injury, or that the relation of master and servant existed between them at that time. It affirmatively pleaded that the injuries of appellee were occasioned by his own negligence and misconduct in knowingly violating its rules by riding on one of its empty cars.

Plaintiff in his reply denied that there was any such rule of the Company, and alleged that he rode in the car with the knowledge and consent of the defendant, and its officers and agents, and with their acquiescence.

The miners were required to assemble at the mouth of the mine at 6:20 each morning, and at that hour they were permitted to start into the mine to go to their respective places of work; an empty car was a short distance in the mine, and appellee together with several others got into it and proceeded along the main entry. It appears that the miners had a custom of doing this, and they were able to manage and control the cars on the up and down grades by the use of their feet in either

pushing or braking with them.   When they had pro-
ceeded some 300 or 400 yards a large piece of slate fell
from the roof on or into the car, and on or against ap-
pellee, causing a serious injury to the spinal cord and
the dislocation of a vertebra resulting in partial paralysis
from his waist down.   His only hope of a permanent im-
provement is in a serious operation, and the physicians
have no confidence in the result of that.

Appellee was 54 years of age at the time, in good
health and physically strong, and earned from $50 to $75
per month.

There was sufficient evidence as to the unsafe condi-
tion of the roof of the entry, and that such condition
had been called to the attention of the officers of the
Company, to authorize the submission of that question
to the jury.

The conflict on this question in the evidence is sharp,
but as it was properly submitted to the jury, we do not
feel justified in disturbing the verdict.

Appellee had been working for appellant as a miner
for some time, but in the spring of 1911, when the work
became slack, he ceased to work in the mine with the
understanding, as he says, that he should return when
the active work began.   Accordingly in July of that year,
he did return and was given by the company his miner's
brass check indicating his number, and pass book which
was used in doing business at the Company's store or
commissary; he continued to work at that time up to and
on the 11th day of August, at which time he again ceased
to work, but retained his miner's check and his pass
book; and did not again work for appellant until the
day of his injury, the 27th day of September.   During
all this time appellee was occupying one of the houses
of the Company, and was never discharged by it, but
claims that he had an arrangement by which in times of
slack work he might stop temporarily and begin again
later.

The morning that he entered the mine there was
present several of the superior officers of the company
who saw him in his miner's outfit starting in; and im-
mediately after the accident one of the officers of the
company telephoned for a physician, saying that "one
of his men had been hurt."

Whether the relation of master and servant exists is
a mixed question of law and fact, and must be submitted
to the jury under proper instructions where there is con-

flict in the evidence. The court in this case required the jury to believe before they could find for the plaintiff that he was at the time of his injury employed by it, and that it was his duty under his employment to go along the entry in the mine at the time of his injury. In 26 Cyc., 971 it is said:

"Whether or not the relation of master and servant exists in a given case is a question of fact, or of mixed law and fact, and is to be proved, as any other like question. Generally speaking, any evidence tending to prove or disprove the relationship is admissible, its weight and sufficiency being left to the jury under the instructions of the court."

The instruction on this subject was certainly not prejudicial to the appellant.

It appears that appellant had a rule which had been printed or typewritten and posted in or near the mine, whereby it prohibited its employes from riding on any of its cars; but the evidence discloses that while this rule was generally known to the employes, it had been habitually and persistently violated by them with the knowledge of, and in the presence of the officers of the Company, and in fact by the officers themselves. This court in C., N. O. & T. P. Ry. Co. v. Lovell, 141 Ky., 260, in dealing with this question has clearly stated this doctrine in the following language:

"Although a rule may be applicable to the injured party, and of such a nature that if in force as to him it would defeat a recovery, he may yet avoid its operation and effect by evidence that with the knowledge or acquiescence of the master or a superior employe whose duty it was to enforce the rule, it was habitually disregarded; and when an issue of this character is made by the evidence the court should submit it to the jury."

In 26 Cyc., 1161, the rule is thus laid down:

"When the rules and regulations established by the master are habitually disobeyed, with the knowledge or express consent of the master, or have been disregarded without his express consent in such a manner and for such a length of time as to raise a presumption that he must have become aware of such habitual disregard, and approved the same, such rules and regulations will be regarded as waived."

The instructions on other questions are not seriously objected to, and in fact they could not be by appellant.

Perceiving no error to the prejudice of appellant, the judgment is affirmed.