# Greene v. Pennington.

(Decided  Oct. 1, 1937.)

C. B. SPICER for appellant.

D. B. SMITH and GEO. R. POPE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Plaintiff, E. L. Greene, aged 65, sought to recover of W. H. Pennington and Del Jones $5,000 damages for injuries sustained under the circumstances detailed below. At the conclusion of the plaintiff's evidence the court directed a verdict for the defendant Pennington, and this occurred:

"In accordance with the instructions of the court, we the jury do agree and find for the defendant, W. H. Pennington. (Signed) George Carter, Foreman. This action is now dismissed as to W. H. Pennington to which plaintiff objects and excepts. * * * Came the plaintiff, E. L. Greene, and after the court peremptorily instructed the jury to find a verdict for the defendant, W. H. Pennington, and moved the court to dismiss this action as to the defendant Del Jones without prejudice, and the court considering said motion, sustains the same, and it is ordered that this action as to Del Jones be dismissed without prejudice."

Plaintiff's motion and grounds for a new trial were overruled, and he appeals. Pennington is the sole appellee. Plaintiff was struck by a bicycle ridden by Jones. His right hip was broken and he sustained other injuries of which he says in his petition:

"He says that at the time he was struck by the bicycle being ridden by the defendant Del Jones, the said Del Jones was working for the defendant, W. H. Pennington, and in the course of his employment, and was or had been delivering groceries to customers of the defendant, W. H. Pennington. He says the said Del Jones had been out to deliver groceries to customers of the defendant, W. H. Pennington, and at the time he so negligently ran said bicycle against the plaintiff he was returning to the store of the defendant W. H. Pennington riding said bicycle."

Defendants categorically denied the petition and pleaded contributory negligence which plaintiff denied in his reply.

The Evidence as to Agency of Jones.

The plaintiff, in his testimony, when asked if he knew Jones, testified as follows:

"A. Yes.

"Q. How long have you known him? A. Some seven or eight or ten years, I didn't know just how long he has been operating that bicycle, but a good long time delivering groceries for Pennington.

"Q. During the seven or eight years you have known him, what has he been doing? A. I believe he has been delivering on that bicycle all the time. I have seen him driving a truck around and I have seen him zig-zagging around on that bicycle.

"Q. What did you say he was doing all that time here in town? A. I never seen him doing anything only on that bicycle delivering those groceries and on a truck a time or two.

"Q. Delivering groceries for whom? (Defendant objects.)

"The Court: Do you know who he was delivering for? A. Yes, sir.

"Q. Who? A. Pennington.

"Q. The defendant, W. H. Pennington? A. Yes * * *

"Q. What street is it (Pennington's store) on, Central Street? A. Yes.

"Q. In the same block that you were hit in or not? A. Yes, in the same block only on the opposite side of the street. I was on the other side of the street from where his store is.

"Q. How far from where you were injured is Pennington's store? A. About sixty or fifty yards, about fifty yards I guess.

"Q. Was the store on the same side or the opposide side from where you were injured? A. The opposite side of the street from where I was hit.

"Q. Did he have anything with him? A. Yes.

"Q. What did he have, if anything, with him? A. Some papers or a bundle, the best I could tell and when he struck me, him and the other boy fell and the bicycle fell over to the left and he fell over that way.

"Q. Describe the bundle that he had if you can. A. I don't know that I could.

"Q. Was it a large bundle? A. Not very.

"Q. How large was it? A. Not very large, the best I remember, he had two little bundles. * * *

"Q. At what place did he have those bundles? A. In the basket and when the bicycle turned over they rolled out.

"Q. Describe that basket to the jury. A. It was about a bushel sized basket, split basket, about the same kind of basket they call a bushel basket.

"Q. Where was this basket? A. In front of him fastened on the bicycle.

"Q. What part of the bicycle was it fastened to? A. Just in front of the man that was riding, fastened onto the bicycle.

"Q. What are they used for? A. To hold the groceries, to put his groceries in while he drove the bicycle and deliver them to different places where they were going. * * *

"Q. If you just asked his name, wasn't you trying to find out who he was? A. I finally found out his name was Del Jones. I knew who he was all the time. I knew he worked for Pennington, but I didn't know his name.

"Q. Of your own knowledge do you know where Del Jones had been? A. No. Yes. No, I don't know where he had been.

"Q. Of your own knowledge do you know where he was going? A. I do not; going on the way to Mr. Pennington's store, he was going that way. * * * I know this is the man or boy. He is 29 years old. He is a man not a boy.

"Q. Previous to that time where had he been driving the bicycle from? A. Mr. Pennington's store."

Mrs. John Beech testified:

"Q. Where did he go after he was wrecked? A. He got on his wheel and went on down to the store.

"Q. In what store? A. Mr. Pennington's."

Mr. John Beech testified:

"Q. Do you know who it was driving the bicycle? A. Jones that delivers for Pennington.

"Q. Where did he go after he struck him? A. He went down the street toward the store and stopped and went in the store.

"Q. What did he do with the bicycle? A. He left that outside the store.

"Q. How long have you known Del Jones? A. I haven't known him personally. I knew his name was Jones. I never talked with him any. I just knew he was Will Jones' son.

"Q. How long to your knowledge has he been delivering groceries for Mr. Pennington? (Defendant objects. Court sustains objection. Plaintiff excepts and avows that if the witness were permitted to answer he would truthfully state as follows: 'I couldn't say—three years or something like that.')" (The matter contained in this avowal should have been admitted.)

Mr. William Brackett testified:

"Q. Do you now know who it was that hit Mr. E. L. Greene? A. It was the Jones boy that is here on trial. I saw him here this morning—the Jones boy.

"Q. How long had you been seeing him before this accident happened? A. I had been living around here for six years and I have seen him regular during that time.

"Q. What has he been doing during that time? (Defendant objects. Court sustains objection. Plaintiff excepts and avows that if the witness were permitted to answer he would truthfully state as follows: A. 'He delivers for Pennington.')" (This answer should have been admitted.)

"Q. How long had you been seeing Jones before this? A. Well, for a year or so maybe longer, every time I was in town for that long. All the time I would see him on the street.

"Q. Did you ever see him on a bicycle before? A. Yes, sir.

"Q. Was that the same bicycle he was on this day? A. It resembles the same some. I wouldn't

want to say it was the same one. He had a basket on the front of it that he carried groceries in.

"Q. Did the one he was riding on the day he struck Mr. Greene, did it have a basket on the front? A. Yes, sir."

Mr. Rollie Beavers testified:

"Q. Do you know Mr. Pennington over there? A. Yes.

"Q. Do you know the defendant, Del Jones, over there? A. I know the boy now but I didn't know him when this occurred.

"Q. Had you seen him before the accident occurred? A. Yes, several times but I didn't know his name.

"Q. Where was the first time you saw him the day of the accident? A. In the store.

"Q. Whose store? A. Mr. Pennington's.

"Q. What was he doing? A. He was loading groceries there in his bicycle.

"Q. What did he have on his bicycle he was putting groceries into? A. The best I can remember it was a basket.

"Q. On the front of his bicycle? A. Yes, that's right. * * *

"Q. How long before you saw somebody run into Mr. Greene was this? A. It must have been thirty or forty minutes.

"Q. To refresh your recollection wasn't it fifteen or twenty minutes? You testified before in this case, didn't you? A. I can't tell just to the minute. It wasn't very long tho.

"Q. Where were you when you saw him putting these things in his basket? A. In the store.

"Q. What did he do then? A. He left out on his bicycle.

"Q. Where did you go? A. Came on up the street.

"Q. Did you see the bicycle hit Mr. Greene? A. Yes.

"Q. Do you know Del Jones now? A. I know him when I see him.

"Q. He is the man you saw leave the store with the bicycle, isn't he? A. Yes, sir."

It was shown in the evidence this accident occurred about 3 p. m. in the city of Harlan, at the southeast corner of the intersection of First street and Central avenue, and within one square of Mr. Pennington's store.

At the conclusion of the plaintiff's evidence the court, when considering the motion to direct a verdict for Pennington, said:

"There is no evidence as to whose business the driver Del Jones was transacting on this trip. There is no evidence as to who he delivered the groceries to, if he did deliver groceries on that trip. * * * The Court thinks that there has not been sufficient evidence to establish agency as was held in the case of Corbin Fruit Company v. Decker, 252 Ky. 766, 68 S. W. (2d) 434, 435. * * * The Court therefore sustains the motion as to the defendant, W. H. Pennington and overrules objection of plaintiff, and directs the jury to find and return a verdict for the defendant W. H. Pennington, alone."

The trial court overlooked the fact that in Corbin Fruit Co. v. Decker, 252 Ky. 766, 68 S. W. (2d) 434, 435, it was definitely shown:

"N. B. Smith, who was driving the truck, had been working by the day for it [the company] for about four years, at the wage of $3 a day. The accident occurred about 3 p. m. on Saturday, June 4, 1932. Smith worked for the Corbin Fruit Company on that day until noon, for which he was paid $1.50 by the Corbin Fruit Company. * * * Thereafter his time was his own, and without the knowledge or consent of the fruit company or any one acting for it, for the purpose of moving his household goods from Corbin to 'Gray's Place,' he took possession of the truck, loaded his household goods, and, in company with W. W. Wade and Glynn Kidd, carried them in the truck, traveling the highway, where the accident happened, from Corbin to 'Gray's Place'."

This caused the court to say in that opinion:

"In taking it and returning it, he was on his own time, not subject to the direction, either expressed or implied, of his employer, to return it to the place

he had obtained it without the latter's knowledge or consent.''

In Dennes v. Jefferson Meat Market, 228 Ky. 164, 14 S. W. (2d) 408, 409, we said:

"The plaintiff had made out a prima facie case when he established that he had received these injuries without fault of his own, by the negligent operation of a car belonging to the defendant, in possession of and being operated during business hours by one of the defendant's chauffeurs.''

What we have said above about what was shown by the evidence in Corbin Fruit Co. v. Decker overcame the prima facie case made out for Decker, but there was no such positive evidence here. Greene had proven this accident occurred during usual business hours, was the result of the negligence of Jones, a regular employee of Pennington, and the presumption that he was working for Pennington at the time it happened was not overcome in any way. Any evidence tending to prove the relation of master and servant is admissible. Memphis Mining Co. v. Shacklett, 153 Ky. 476, 155 S. W. 1154.

The question is, Whose work was being done? The evidence tends to show it was Pennington's. In Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S. W. (2d) 1014, 1017, we said:

"The master is he who can say to the servant, 'Go' and he goeth, 'Come' and he cometh, or 'Do this' and he doeth it. Who has power to say, 'Do this first,' and 'Do it this way,' 'Do not do that,' 'Hurry up,' or otherwise direct the detail of the manner of its doing? Whose work was being done? When we find that party, we have found the master.''

We have concluded the evidence shows Pennington was then the master of Jones and Jones was then serving said master.

It is immaterial who owns the appliances the servant was using, and that question is discussed in the Bowen Case, supra, and also in Postal Teleg.-Cable Co. v. Murrell, 180 Ky. 52, 201 S. W. 462, L. R. A. 1918D, 357.

A verdict should be directed peremptorily only if, after admitting every fact shown by the plaintiff's evidence to be true as well as all reasonable inferences that can be drawn therefrom, he has failed to establish

his case. Louisville & N. R. Co. v. Baker's Adm'r, 183 Ky. 795, 210 S. W. 674; Hines v. Gaines, 192 Ky. 198, 232 S. W. 624. The verdict should not be directed if the evidence constitutes a scintilla of proof, though it might be insufficient to sustain the verdict. Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. (2d) 220. The jury are the triers of the facts, Caledonian Ins. Co. v. Naifeh, 229 Ky. 293, 16 S. W. (2d) 1046, and it is the duty of the court when a peremptory instruction is asked to construe the evidence most favorably to the plaintiff, City of Louisville v. Hale's Adm'r, 238 Ky. 182, 37 S. W. (2d) 20.

The giving of the peremptory instruction in this case was erroneous.

Judgment reversed.