# Kentucky Transport Co. et al. v. Campbell.

March 13, 1945.

C. S. Landrum and I. M. Combs for appellants.

Williams & Allen and Leebern Allen for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellee instituted action against appellants, a motor transportation company, and E. L. Dykes, operating one of its trucks, and the A. & P. Company. In his petition which charged negligence of the three defendants, appellee sought recovery for damage to his truck to the amount of $1,700, and $280 "loss of time", presumably in the use of his equipment, from December 16 to December 27.

The three defendants denied all allegations of the petition and plead contributory negligence. Upon submission the jury found for Campbell against the transport company and Dykes, in a total sum of $1,200, not separating the award for damage to the truck and "loss of time." The proof shows the accident occurred on December 16, 1943, and suit was filed eleven days thereafter.

The jury found for the A. & P. Company, and judgment was entered in accord. There is no cross appeal.

Upon appeal by Transport Company and Dykes, three grounds are urged for reversal: (1) The trial court erred in overruling appellants' motion for a peremptory instruction. (2) The court gave an erroneous and prejudicial instruction on the measure of damages. And (3) the amount awarded by the jury is excessive.

At the time of the accident Campbell was driving his truck to which was attached a 23-foot trailer. Dykes was driving a truck of the Transport Company, having attached a 20-foot trailer of the A. & P. Company for which the Transport Company was at the time doing contract hauling. Campbell testified that he had left Pine Ridge on his way to some point in Breathitt County to see about hauling some lumber. About two miles from Campton there was what Campbell described as a "sharp curve", known as the Meadow Branch Curve. As he approached this curve he was driving about 25 miles per hour. As he went into the curve, or attempted to round it, and driving fully on his right side of the road, he saw the other truck approaching at a distance of about 100 feet. There was a bank on his left and on his right a guard fence of locust posts well set in the ground with cable between them. Campbell says that the approaching truck was on its left side of the road; that its position only left him about two feet to pass. In order to avert a collision both drivers pulled to their right sides, with the result that Campbell's truck went upon the gravel, skidded and struck the guard fence tearing the front wheels from under the truck, and doing considerable damage to the tractor and some to the trailer. Campbell said that the Transport Company truck was approaching at the rate of about 35 miles per hour.

Myrtle Perry and her son were riding with Campbell and both in the main corroborated Campbell, though the boy did not attempt to estimate the speed of either truck. Logan Holland said he was walking on the highway about 30 yards away from the point of the accident. He was traveling in the same direction as was the Transport truck. He heard it coming and stepped off the highway. He said as it passed him, "it was entirely on the left side of the roadway. After he passed I just saw a flash of the other truck and heard the crash."

Dyke was the only witness for defendants. He had been driving for the Transport Company in the terri-

tory for thirteen years. As he approached the curve he was driving not over 30 miles per hour, on his right side of the road and no part of his outfit was on the left side. He said that as he made his way around the curve he saw the other truck approaching, and it was "right in the middle of the road, traveling 40 or 50 miles per hour." He anticipated a collision and pulled his truck sharply to the right, over on the shoulder of the road. "There is not much shoulder on that side, but considerable shoulder on the other side. The highway is plenty wide at the point for two trucks to pass if they are on the right side as they pass." He said that since the collision was averted he merely looked back and could not see the Campbell truck, and not knowing of its dilemma went on his way. He did not hear any crash. He said that Campbell in another vehicle overtook him down in Powell County and told him that he crowded him off the road, and that he had struck a guard rail. Dykes said "No"; that he was on his side and some feet over the shoulder in order to avoid the collision; that he, Campbell, was on the wrong side and running at 40 or 45 miles per hour. Campbell said "No", that he was only going 35 miles per hour. Campbell does not say anything on this point except that Dykes had gone into the ditch to avoid the collision. Both parties agree that the road at the time of the accident was dry.

Point No. 1 may be disposed of briefly. The argument of appellants is that the proof showed Campbell guilty of contributory negligence as a matter of law. Section 189.410, KRS, provides that the operator of a motor vehicle when approaching a curve, which prevents a clear view of the highway for a distance of 150 feet ahead, shall hold the vehicle under control and give warning of his approach by sounding a horn or other device. In Standard Oil Co. v. Brittain, 236 Ky. 625, 33 S. W. 2d 625, pointing to the like provision in KS sec. 2739g-47, we held that the failure to blow the horn was not sufficient to justify a conclusion that the failure was contributory negligence as a matter of law, though the evidence was such as to authorize an instruction on the point had one been offered. Here the defendants offered, and the court gave, an instruction on this duty as well as his duty to have his vehicle under control. As to whether he did not have control of his car is another matter. He did have sufficient control to avoid the collision, but in doing so skidded into the fence. He

says he was not driving at a greater rate than 25 miles per hour. Dykes said he was driving 35 miles. There is a conflict. Under the statute it may be assumed that at a speed of not more than 25 miles per hour a person has reasonable control of his vehicle. KRS 189.390 provides that where a highway rounds a sharp curve, a speed of more than 25 miles per hour shall be prima facie evidence of improper driving. Dykes admitted a speed of 30 miles per hour. The rule is that a verdict should be directed peremptorily only if after admitting every fact shown by plaintiffs' proof to be true, as well as all reasonable inferences that can be drawn thereupon, he has failed to establish his case. Greene v. Pennington, 270 Ky. 28, 108 S. W. 2d 1013. The argument of counsel is answered by the opinion in Louisville Auto Supply Co. v. Irvine, 212 Ky. 60, 278 S. W. 149. Here it might be conceived that both parties were driving negligently (as to position), but this question was taken care of by an instruction offered by the defendants. Berryman v. Worthington, 240 Ky. 756, 43 S. W. 2d 5.

The second ground requires some recital of proof on the matter of damages. Campbell in his pleading fixed the value of his truck before the injury at $2,700; after the injury at $1,000, although he had after its purchase in Idaho registered it in Kentucky at $600. When it came to the matter of damages for loss of use we find his pleading to state that prior to the time of the injury he was "earning above expenses $240 per week, and he was forced to cease using it from the 16th to the 27th of December 1943", eleven days. In his proof as to loss of use, he said: "It was 56 days before I got my truck repaired. After I got it repaired I was on the road every day using it in my business until last week. I have made as much as $200 a day with my truck, but would average $50 per day. * * * I had purchased some lumber on the side of the road near London and hauled it to the planing mill just out of London, and it was finished for me and I loaded it the next day and took it to Middletown, Ohio. That is the way I carried on my business. I would haul the lumber to the mill one day and get it the next day. I made an average of $50 a day in that way." (This line of evidence was objected to by defendants, but objection was overruled). It was shown that he paid $338.85 for repairs. At another point appellant said, basing his figures on the 56 days which it took to get his truck re-

paired: "I made an average of $50 a day with my truck and I was damaged $2600 by being out of the use of my truck."

On the proof adduced the court gave to the jury the following instruction on the measure for loss of use: "If you find for the plaintiff you will award him such sum in damages as you may believe from the evidence * * * was the fair value of the loss, if any, of the use of said truck by reason of the injury, if any, not to exceed the sum of $280." Counsel contends that this instruction was erroneous and prejudicial, because there was no proof of damage by reason of loss of use, under the rules relative to the measure of such damage. That the proof of loss of an average of $50 per day was not limited to what the truck was worth per day, but included the elements of what Campbell conceived to be his daily earnings. This may have included Campbell's personal services, and what he made by way of profits in trading in timber and lumber.

Under our decisions there was not sufficient competent proof to submit the question of loss of use to the jury. The well established rule is that where an injury to personal property results in the loss of the use of the property, while it is being repaired, the owner may recover the reasonable value of the use during a period necessary to effect such repairs, made necessary by the injury, as were required to place the property in a condition equal to but not better than that in which it was immediately prior to the injury. Southern R. Co. v. Kentucky Grocery Co., 166 Ky. 94, 178 S. W. 1162, 1163. In that case we held objectionable the testimony "the truck was worth $20 per day to me", as well as evidence that appellee had paid out various sums for teams and wagons to do the hauling. After stating the rule, supra, we said:

"In this case, the property being an automobile truck, the criterion is the reasonable net rental value upon the market in Louisville of the truck in question, or of other trucks of like capacity and equal performance; the lessee furnishing driver and bearing all such other expenses as the owner himself would have to bear in the operation of his own car."

The rule in the above case was quoted with approval in Towles v. Perkins, 266 Ky. 25, 98 S. W. 2d 27, 28. We found in the first named case the evidence adduced

to have been incompetent. In the second case we found no evidence "as to the time reasonably necessary to effect repairs, but the court submitted this element of damages in an instruction which authorized the jury to award plaintiff compensation for the loss of the use of the automobile for a period of two months without a showing that this period of time was reasonable."

The vice in the instruction as given on this subject is obvious, and is aggravated by the incompetent testimony (loss of use) by Campbell. Counsel for appellee indirectly admitting that the instruction on use was faulty, insists that appellees were not prejudiced, because Campbell sued for $1,000 for difference in value, and $280 for loss of use, and the jury awarded only the sum of $1,200. The idea was that since appellee alleged a difference in value of $1,000, which proof was not contradicted, there was no prejudice, relying on Chesapeake & O. R. Co. v. Boren, 202 Ky. 348, 259 S. W. 711, where it appears a correct instruction was given on damages by reason of loss of use. If the testimony here as to value of the truck had been more satisfactory and competent in all respects we might be inclined to follow the rule. But with all the incompetent evidence, we are of the opinion that the rule in the Boren case, supra, should not apply here. Campbell upon registration valued his truck at not more than $600. While he says that after the accident the truck was of "no value to any one", he did have it repaired at a cost of $338.85, and says: "After I got it repaired I was on the road every day with it; using it in my business, until last week." We do not find it necessary to comment on the last ground urged by appellant; since the case must be reversed on the ground of faulty instruction as to damage for loss of use, the question is reserved.

Judgment reversed with directions to award a new trial consistent with this opinion.

The whole Court sitting, except Judge Thomas.